[Civ. No. 1671. Fifth Dist., June 18, 1973.]

DALLAS R. SMITH et al., Plaintiffs and Appellants, v.
TRAVELERS INDEMNITY COMPANY,
Defendant and Respondent.

1012

## COUNSEL

R. W. Levy for Plaintiffs and Appellants.

Stammer, McKnight, Barnum & Bailey, Galen McKnight and James N. Hays for Defendant and Respondent.

## OPINION

**FRANSON, J.**—United Pacific Insurance Company (hereinafter "appellant") filed a complaint for breach of a liability insurance policy alleging that respondent failed to defend and indemnify Dallas Smith (hereinafter "Smith") and Linda Iskenderian (hereinafter "Linda") in a third party action and other third party claims for bodily injury and property damage, that appellant was subrogated to the rights of Smith and Linda resulting from respondent's breach of duty and that it is entitled to damages in the amount it paid out in defending and settling the action and the other claims. By its answer respondent denied any duty to defend and indemnify Smith or Linda and by way of affirmative defense, alleged that its coverage was excess as to any liability arising out of the accident and that appellant acted as a volunteer in settling the third party action and other claims without the consent of respondent.

On appeal, appellant asks this court to direct entry of judgment against respondent for its pro rata share of the settlement and defense costs of the third party action and claims with interest and costs of suit.

On September 20, 1966, a Honda motorcycle operated by Roy Parsley and owned by Joyce Parsley collided with a 1959 Chevrolet pickup owned by Smith and driven by Linda. Leatherwood was a passenger on the motorcycle. The pickup was pulling a horsetrailer owned by Linda's father, Asan Iskenderian; Linda was using the trailer with permission of her father.

Linda was making a left turn at an intersection and. the motorcycle came in contact with the right rear of the pickup; apparently there was no physical contact between the motorcycle and the trailer.[1]

At the time of the accident, appellant had in effect an automobile liability policy issued to Smith as the named insured and covering the pickup truck. The policy insured permissive users of the pickup; Linda was driving the pickup with the permission of Smith. The policy provided bodily injury liability coverage of $10,000 for each person and $20,000 for each accident and $5,000 property damage liability coverage.

At the time of the accident, respondent had in effect a "comprehensive" liability policy which included a personal automobile liability endorsement issued to Asan Iskenderian as the named insured. The policy insured

---

[1]The police accident report notes that the motorcycle laid down 39 feet of skid marks prior to impact with the pickup.

permissive users of owned automobiles and the word "automobile" is defined to include a trailer.

Respondent's policy provided pro rata liability coverage with other insurance except that the coverage for nonowned automobiles was excess over other insurance. The limits of liability under respondent's policy were $100,000 for each person and $300,000 for each accident, for bodily injury, and $10,000 for automobile property damage.

On July 3, 1967, Leatherwood filed an action against Linda and Smith alleging that he sustained personal injuries and damages as a result of Linda's negligent operation of the pickup truck; the complaint did not mention the trailer. Appellant undertook a defense of the action.

Respondent did not receive a report of the accident or a demand for defense of the lawsuit from either Linda or Smith. However, on January 24, 1968, appellant notified respondent in writing of the details of the accident including the fact that Linda was pulling the horsetrailer at the time of the accident; appellant requested that respondent furnish a pro rata defense of the action. After investigation of the facts respondent refused to participate in the defense.

Appellant ultimately compromised and settled the third party action by paying $3,751 for the personal injuries of Leatherwood and $1,407.34 for attorney's fees and expenses in defending the action. The trial court found the amount of the settlement and defense costs to be reasonable. Appellant also paid Roy Parsley $151.63 for his personal injuries and paid Joyce Parsley $348.37 for damage to the motorcycle.

The trial court ruled that respondent was not obligated to defend the third party action or to pay any sum toward the bodily injury and property damage liability arising from the accident. It concluded that although respondent's policy covered the operation and use of the horsetrailer being towed by the pickup "no liability attached under said policy in connection with . . . the use of the said horsetrailer." The court's rationale as indicated by its findings was that there was no evidence of negligent conduct by Linda in the operation of the trailer nor was any such negligence a proximate cause of the accident. The court also relied on the fact that the complaint filed in the personal injury action did not mention the horsetrailer; that no notice of the accident was given by the insured under respondent's policy nor was any demand or request for coverage made on respondent until it received notice from appellant on January 24, 1968.

For the reasons hereafter stated, we hold that the trial court's findings and conclusions are erroneous as a matter of law.

Irrefragably, Linda's act of towing the trailer behind the pickup was a "use" of the trailer. (*St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.,* 244 Cal.App.2d 826, 831-832 [53 Cal.Rptr. 650]; *American Fire & Casualty Co.* v. *Allstate Ins. Co.* (4th Cir. 1954) 214 F.2d 523.) Linda was using the horsetrailer in the manner contemplated by respondent and its named insured, that is, by towing it behind an automobile. (See *St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co., supra,* 244 Cal.App.2d 826, 831.)

The pivotal question is whether the accident arose out of that use. In *Insurance Co. of North America* v. *Royal Indemnity Co.* (6th Cir. 1970) 429 F.2d 1014, a diesel tractor insured by Royal was pulling a trailer insured by INA when the tractor-trailer unit went out of control, crossed over the center of the highway and collided head-on with an oncoming vehicle. The INA policy provided that the insurance there afforded was primary insurance except when stated to apply in excess of or contingent upon the absence of other insurance. The INA policy further provided that the insurance was excess with respect to hired or nonowned automobiles. The reviewing court first concluded that since the trailer was owned by the named INA insured, the INA policy provided primary insurance on the trailer. The court next concluded that if the accident did not arise out of the use of the trailer, INA was liable only as an excess insurer of the tractor, even though it was the primary insurer of the trailer.

The trial court found "[t]here was no evidence that the trailer was defective or physically came in contact with the Williams vehicle [the other car in the accident], and it did not figure in the accident other than being a part of the tractor-trailer unit." INA contended that under this finding the accident did not arise out of the use of the trailer.

The reviewing court stated that the phrase "arising out of the use of the automobile" does not require a finding that the injury was directly and proximately caused by the use of the trailer; the phrase requires only a causal connection with the accident. "The fact that the trailer did not come into contact with Williams' automobile is not determinative. The trailer was being used at the time of the accident. It cannot be said that the occurrence did not 'arise out of the use' of the trailer." (*Insurance Co. of North America* v. *Royal Indemnity Co., supra,* at p. 1019.) (See also *American Fire & Casualty Co.* v. *Allstate Ins. Co.* (4th Cir. 1954) 214 F.2d 523.)

■ As stated in *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co.,* 249 Cal.App.2d 144 at pages 150-151 [57 Cal.Rptr. 240]: " 'The term

"using" when employed in a policy without restrictive terms, must be understood in its most comprehensive sense. It does not require that the injury be the direct and proximate result in any strict legal sense of the active movement of the motor vehicle covered by the policy.'

". . . Thus, the fact that the operation of the motor vehicle . . . was not the proximate cause of the accident is immaterial; the accident did arise out of the use of the automobile. . . ."

Respondent's reliance on *Truck Ins. Exch.* v. *Webb,* 256 Cal.App.2d 140 [63 Cal.Rptr. 791] and *Pacific Indem. Co.* v. *Truck Ins. Exch.,* 270 Cal.App.2d 700 [76 Cal.Rptr. 281], is misplaced. These cases involved situations where the court found that the injury was directly caused by an independent act or intervening cause disassociated from and unrelated to the use of the insured vehicle. Both cases recognize that the insured vehicle need not be the proximate cause of the injury; they stand only for the proposition that if the accident was caused by a peripheral activity wholly independent of the use of the vehicle the injury does not "arise out of" such use.

We conclude that the accident arose out of the use of the trailer; Linda used the trailer by towing it behind the pickup and her *negligent operation of the combined rig* caused the accident.[2] Because the third party plaintiff was injured as the result of Linda's use of the trailer, respondent's excess insurance provision as to coverage for nonowned automobiles does not come into play.[3]

Respondent cannot escape liability for primary coverage merely because, in addition to Linda's use of the trailer, a nonowned automobile (the pickup) was involved. (*Pacific Employers Ins. Co.* v. *Maryland Casualty*

---

[2]As previously noted (fn. 1) the motorcycle left some 39 ft. of skid marks prior to impact with the pickup. It cannot be said that if the trailer had not been attached to the pickup that the motorcycle driver might not have avoided the pickup. Absent the trailer, Linda might have cleared the intersection. Manifestly, the trailer was at least a cause in fact of the accident. (*Universal Underwriters Ins. Co.* v. *Aetna Ins. Co.,* supra, 249 Cal.App.2d 144, 151; see also *Pacific Employers Ins. Co.* v. *Maryland Casualty Co.,* 65 Cal.2d 318, 327 [54 Cal.Rptr. 385, 419 P.2d 641].)

[3]We recognize that appellant has changed its theory on appeal. In the trial court, appellant asserted its right to be subrogated to Linda's claim against respondent as a permissive user of the *pickup,* a nonowned automobile under respondent's policy. On appeal it claims that it is entitled to contribution from respondent because Linda was a permissive user of the *trailer,* an owned automobile. Normally, a party is not permitted to change his position by adopting a new and different theory on appeal; such conduct is unfair to the trial court and unjust to the opposing litigant. However, an exception to the doctrine of the theory of the case arises when there is no dispute as to the facts and questions of law alone are presented. (See *Amer. Auto. Ins. Co.* v. *Seaboard Surety Co.,* 155 Cal.App.2d 192, 200 [318 P.2d 84]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 288, p. 4275.) Respondent does not challenge appellant's change of theory on appeal.

*Co., supra,* 65 Cal.2d 318; *Colby* v. *Liberty Mutual Ins. Co.,* 220 Cal. App.2d 38, 46 [33 Cal.Rptr. 538].)

In *Pacific Employers Ins. Co.* v. *Maryland Casualty Co., supra,* a trucker who was a named insured under Pacific's policy sent a truck and trailer with two drivers to the plant of Libby, Inc. Two employees of Libby, using forklifts, proceeded to move case goods stacked on pallets onto the trailer. During the loading operation injuries were sustained by one of the truck drivers. He commenced suit against Libby and one of its employees, alleging that the latter negligently operated one of the forklifts and thereby caused his injury.

Pacific's policy insuring the trucker covered the loading and unloading of the trailer in question. Under Pacific's policy the negligent Libby employee was defined as an insured in that he was using the trailer while loading it. Pacific's policy provided for pro rata coverage, but declared that its coverage was excess with respect to a loss arising out of the use of a nonowned or hired automobile. Pacific contended that its coverage was excess because the loss arose out of the use of the forklift which was a nonowned or hired vehicle. The Supreme Court rejected this contention, stating, "[T]hat loss also arose out of the use of the insured's truck and trailer in conjunction with the use of the forklift." (P. 327.) Pacific's coverage was held to be primary as to losses arising out of the use of the trailer.

We hold that the respondent's coverage is primary as to the loss arising out of Linda's use of the trailer.

■ Respondent's contention that its duty to defend was governed by the allegations of the complaint in the third party action, is likewise without merit. Although the complaint did not mention the trailer, respondent was advised by appellant, and subsequently verified through its own investigation, that the trailer was in fact being towed at the time of the accident. An insurer bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy irrespective of the source of its information. (See *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168]; *Campidonica* v. *Transport Indemnity Co.,* 217 Cal.App.2d 403 [31 Cal.Rptr. 735].)

■ Any contention by respondent that it was prejudiced by a lack of timely notice of the accident is answered by the fact that it offered no evidence of prejudice at trial. The pretrial order did not preserve as an issue the question of respondent's possible prejudice from lack of timely

notice; the only pretrial issue was whether the settlement and attorneys' fees were reasonable and the trial court so found. It was respondent's burden to prove that it was prejudiced by lack of timely notice; this it failed to do. (*Hanover Insurance Co.* v. *Carroll,* 241 Cal.App.2d 558, 569 [50 Cal. Rptr. 704]; see *Campbell* v. *Allstate Ins. Co.,* 60 Cal.2d 303 [32 Cal.Rptr. 827, 384 P.2d 155].)

Having concluded that both policies afford pro rata primary coverage for the accident the final question is whether appellant is entitled to contribution from respondent for its share of the settlement and defense costs. It appears that appellant and respondent are coinsurers of the same risk, i.e., the loss arising from Linda's negligent driving of the combined rig. (See Ins. Code, § 590; *Ohio Cas. Ins. Co.* v. *Harbor Ins. Co.,* 259 Cal. App.2d 207 [66 Cal.Rptr. 340]; 16 Couch on Insurance (2d ed. 1966) §§ 62:92, 62:94, 62:95 and 62:161.)

It has been held that there is no right of contribution for the benefit of a coinsurer that pays more than its pro rata portion of a loss. (*Pylon, Inc.* v. *Olympic Ins. Co.,* 271 Cal.App.2d 643, 649 [77 Cal.Rptr. 72]; *Fidelity etc. Co.* v. *Fireman's Fund Indemnity Co.,* 38 Cal.App.2d 1, 4 [100 P.2d 364].) The apparent reason for this rule is to safeguard one coinsurer from being obligated by reason of the unilateral voluntary settlement of another insurer. (*Ohio Cas. Ins. Co.* v. *Harbor Ins. Co., supra,* 259 Cal.App.2d 207, 217.)

However, there is authority to the contrary. In *Employers etc. Ins. Co.* v. *Pac. Indem. Co.,* 167 Cal.App.2d 369, at page 380 [334 P.2d 658], the court approved the following statement from *Commercial Standard Ins. Co.* v. *American Emp. Ins. Co.,* 209 F.2d 60, 64-65: "If a person has any palpable interest which will be protected by the extinguishment of the debt, he may pay the debt and be entitled to hold and enforce just as a creditor could. [Citation.] Payment of the debt of another under a moral obligation will support equitable subrogation; and the remedy will be applied in all cases where demanded by the dictates of equity, good conscience, and public policy. [Citation.]"

In *Massachusetts Bonding & Ins. Co.* v. *Car & Gen. Ins. Corp.,* 152 F.Supp. 477, at page 482, it is stated: "Moreover, a 'volunteer' under the principle defendant seeks to apply, is a stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay under the circumstances. [Citation.]" (See also *Employers etc. Ins. Co.* v. *Pac. Indem. Co., supra,* 167 Cal.App.2d 369, 380-381.)

In the case at bench respondent's disclaimer of coverage in substance created a situation where there was no "other insurance." Appellant was legally obligated to defend and indemnify its insured for the entire claim. It cannot be said that appellant acted as a volunteer when it paid the entire claim.

On June 14, 1968, respondent communicated by letter to appellant and stated: "If you still insist that we are obligated for pro rata coverage in this situation, then we will agree that if you will continue to handle and/or otherwise attempt to dispose of the case in good faith within your limits, that neither party will be considered as having waived any rights under the respective policies or any coverage questions that we have in dispute. Furthermore, if the case is disposed of by way of settlement within your policy limits, we will not question the amount of your settlement, but we can then submit our differences to special arbitration. . . ." By this letter respondent approved any settlement to be made by appellant provided it was within appellant's policy limits subject only to respondent's right to assert a lack of coverage under its policy or that its policy was excess as to any other insurance. Respondent is estopped from now contending that the settlement was without its consent.

As stated in *Continental Cas. Co.* v. *Zurich Ins. Co.,* 57 Cal.2d 27, at page 38 [17 Cal.Rptr. 12, 366 P.2d 455]: "[N]o insurer which deliberately breaches its obligation to the insured should be permitted thereby to profit, whether at the expense of the insured, or of an insurer which faithfully discharges its obligation."

We hold that under the principles of equitable subrogation appellant is entitled to reimbursement from respondent for its pro rata share of the settlement and defense costs of the third party action filed by Leatherwood and the settlement of the claims of Roy and Joyce Parsley.

The judgment is reversed with directions to enter a judgment for appellant in the amount of respondent's pro rata share of the settlements and defense costs and costs of suit. Appellant to recover its costs on appeal.

Brown, (G. A.), P. J., and Gargano, J., concurred.

A petition for a rehearing was denied July 12, 1973, and the opinion was modified to read as printed above.