[Civ. No. 7071. Fifth Dist. May 17, 1984.]

MISSION INSURANCE COMPANY et al., Plaintiffs and Appellants, v. HARTFORD INSURANCE COMPANY et al., Defendants and Respondents.

1200

COUNSEL

Cardozo, Nickerson, Martelli, Curtis & Arata and Paul L. Martelli for Plaintiffs and Appellants.

Brunn, Lacey & Thayer and Charles K. Brunn for Defendants and Respondents.

OPINION

**MARTIN, J.**—Mission Insurance Company (Mission), Joseph E. Smith, Jr., Milton Parrish doing business as Parrish Farms and CLT, Inc., appeal from a judgment entered on February 8, 1982, in Stanislaus County Superior Court in favor of Hartford Insurance Company (Hartford), Kenneth Joseph Dixon, Manuel J. Faria and Patrick J. Faria doing business as M & P Faria Farm Trucking (Faria Trucking).

The judgment decrees that Mission shall reimburse Hartford one-half of the amount Hartford paid on behalf of Dixon, the Farias and Faria Trucking in settlement of a wrongful death suit.

On February 25, 1982, appellants filed a timely notice of appeal from the judgment.

STATEMENT OF FACTS

In 1979 CLT, Inc.,[1] contracted with Hunt-Wesson Foods to transport tomatoes from growers' fields to the Hunt-Wesson cannery in Oakdale during harvest season. To fulfill that contract CLT, Inc. entered into subhaul agreements with various truckers, including Faria Trucking. On July 10, 1979, CLT, Inc. and Faria Trucking executed a written "sub-hauler agreement" prepared by Steve Pedrazzi, manager of CLT, Inc.

Pursuant to article four of the agreement, Patrick Faria contacted his insurance agent, William Pfitzer, who provided CLT, Inc. a certificate of insurance showing the limits of Faria Trucking's bodily injury, property damage, cargo, and workers' compensation coverage. Pfitzer obtained from Faria's liability insurance company, Hartford, an indorsement covering two unidentified semitrailers and two unidentified pull trailers. However, he

---

[1]CLT, Inc. is a corporation owned and operated by members of the Joseph E. Smith, Jr., family.

failed to add CLT, Inc. as a party additionally insured under the Faria policy. Pedrazzi received the certificate of insurance from Hartford regarding the trailers, saw the CLT, Inc. name on the document, and concluded Faria had complied with article four of the subhaul agreement.

On September 25, 1979, one Tommie Leon Childers died in a collision with a 1973 Freightliner tractor and trailer rig driven by Kenneth Joseph Dixon on State Route 33 near Ike Crow Road in Stanislaus County.

Faria Trucking, a copartnership, owned the Freightliner tractor and Dixon was driving the vehicle in the course and scope of his employment with the partnership. Joseph E. Smith & Son owned the semitrailer and pull trailer attached to the tractor and had leased the trailers to CLT, Inc. pursuant to a written agreement.

Prior to the accident Hartford had issued a policy of insurance, policy number 51 C 226370, with Manuel J. Faria and Patrick J. Faria, doing business as M & P Faria Farm Trucking, as named insureds. This policy covered the Freightliner tractor and any trailers attached to the tractor at the time of the accident. Prior to the accident Mission had issued an insurance policy, policy number HAC 26319, with the following named insureds: "Milton Parrish and Joseph E. Smith, Jr., DBA: Smith and Parrish Farms; Joseph E. Smith, Joseph E. Smith, Jr., and Sheldon Smith, DBA: Joe Smith and Sons; Smith and Sons Trucking; and CLT, Inc." That policy incorporated by reference certain insurance company records describing the semitrailer and pull trailer attached to the Freightliner tractor at the time of the accident.

As a result of the collision, Childers' widow and children filed a wrongful death action in Stanislaus County Superior Court against Dixon, Faria Trucking, and J.E. Smith & Son, a partnership. The Childers' claim was subsequently settled and the action dismissed pursuant to an agreement with Hartford. Hartford agreed to make a lump sum payment of $200,000 to the claimants and to make semiannual payments of $50,000 each until the total sum of $450,000 had been paid.

The defendants in the wrongful death action filed a series of cross-complaints against one another seeking indemnity and alleging breach of contract as to the subhaul agreement. The superior court joined these actions with a declaratory relief action filed by Mission. The trial court ruled both the Hartford and Mission policies provided primary coverage and both insurance companies should share equally in the settlement made by Hartford with the Childers.

## I. Was the Mission Policy a Primary Policy of Insurance?

Appellants contend any coverage afforded Faria under the Mission policy is excess to that afforded by the Hartford policy.

Appellants argue there is no basis for establishing liability of CLT, Inc. or its associated entities to plaintiffs in the wrongful death action. Appellants contend it is inequitable to compel Mission to share the costs of the settlement since "[i]t is sound public policy to place the primary liability upon the party who is the most responsible for the loss and who was in the best position to have avoided it, thus encouraging the negligent party to exercise due care." (*Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co.* (1978) 85 Cal.App.3d 481, 488 [149 Cal.Rptr. 472].) Appellants argue respondents were in the best position to have avoided the loss arising from the accident.

Double insurance exists where the same person is insured by several insurers separately in respect to the same subject and interest. (Ins. Code, § 590.) "One problem in the field of insurance law which seems to have given the courts even more difficulty than coverage under an omnibus clause, or the matter of intentional acts under both personal and liability contracts, is that of duplicate, or overlapping, insurance. Confusion is apparent. This may be understandable, in part, when we consider that even companies do not seem to know precisely where they stand. In any event, they sue each other at the drop of a hat in order to secure a participation in the risk-taking process, to the point that some courts have, in effect, stated: 'A pox on both their houses'." (8A Appleman, Insurance Law and Practice (1981) § 4906 at p. 341.) ██ Insurance Code section 11580.8 provides in relevant part: "The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle.

"The Legislature further declares it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply, . . ."[2] Insurance

---

[2]Prior to 1970, the allocation of loss between coinsurers, two or more insurers affording coverage to the same loss, was made by judicial resort to the provisions of the respective policies. Often the policies contained provisions (so-called "other insurance" clauses) through which one coinsurer would attempt to avoid or minimize the amount of its liability

Code section 11580.9 provides in relevant part: "(d) Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall. be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and *the insurance afforded by any other policy or policies shall be excess."*

Subdivision (a) of that section pertains to a named insured engaged in the business of selling, repairing, delivering, testing, or storing motor vehicles. Subdivision (b) pertains to a named insured engaged in the business of renting or leasing motor vehicles without operators. Subdivision (c) pertains to a loss arising out of the loading or unloading of a motor vehicle. From the facts before us, it does not appear that subdivisions (a), (b) or (c) apply to the instant case.

■ The First District Court of Appeal has defined the insurance terms relevant to this issue as follows: *"Primary* coverage is insurance coverage whereby, *under the terms of the policy,* liability attaches *immediately* upon the happening of the occurrence that gives rise to liability. (*Oil Base, Inc.* v. *Transport Indem. Co.* (1956) 143 Cal.App.2d 453, 467 . . . .) Primary insurers generally have the primary duty of defense.

" *'Excess'* or *secondary* coverage is coverage whereby, *under the terms of the policy,* liability attaches only after a predetermined amount of primary coverage has been exhausted. It is not uncommon to have several layers of secondary insurance . . . . Secondary insurance is sometimes referred to as 'umbrella' insurance. When secondary insurance is written to be excess to identified policies, it is said to be 'specific excess.'

" . . . . . . . . . . . . . . . . . . .

"A problem arises when two or more policies apply at the same level of coverage. Most insurance contracts include some provision attempting to limit the insurer's liability in the event that another insurance policy covers the same loss.

---

at the expense of other coinsurers. Judicial construction of these provisions was marked by inconsistency, prompting commentators and the courts alike to request legislative clarification. In 1970 the Legislature responded to these requests with the enactment of Insurance Code sections 11580.8 and 11580.9. Insurance Code section 11580.9 contains a series of alternative conclusive presumptions to be employed by the courts in determining priority of coverage between coinsurers. This section embodies the public policy declared by the Legislature in companion section 11580.8. (*Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co.,* *supra,* 85 Cal.App.3d 481, 485.)

"There are several typical forms of 'other insurance' clauses:

"1. Pro rata. This clause provides that if there is other valid and collectible insurance, then the insurer shall not be liable for more than his pro rata share of the loss.

"2. Excess. This clause provides that if there is other valid and collectible insurance, then the insurer shall not be liable except to the extent that the loss exceeds such other valid and collectible insurance (i.e., this policy shall be excess to other valid and collectible insurance).

"3. Escape. This clause provides that the insurer is not liable for any loss that is covered by other insurance (i.e., the existence of other insurance extinguishes insurer's liability to the extent of such other insurance)." (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 597-598 [178 Cal.Rptr. 908].)

Appellants contend the Hartford policy provides primary coverage for both the owned tractor and nonowned trailers while the Mission policy provides only excess coverage for the tractor. Respondents agree the Hartford policy is a primary policy of insurance extending coverage to the trailers as well as to the tractor. However, they contend the Mission policy is also one of primary insurance which extends coverage to the operation of the tractor and makes respondents additional insureds by virtue of their permissive use of the trailers. Respondents contend this conclusion is mandated by interpretation of the permissive use sections of the policy as well as Insurance Code section 11580.1, subdivision (b)(4). That code section provides in relevant part: "(a) No policy of automobile liability insurance described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered in this state on or after the effective date of this section unless it contains the provisions set forth in subdivision (b). However, none of the requirements of subdivision (b) shall apply to the insurance afforded under any such policy (1) to the extent that such insurance exceeds the limits specified in subdivision (a) of Section 16056 of the Vehicle Code, or (2) if such policy contains an underlying insurance requirement, or provides for a retained limit of self-insurance, equal to or greater than the limits specified in subdivision (a) of Section 16056 of the Vehicle Code.

"(b) Every policy of automobile liability insurance to which subdivision (a) applies shall contain all of the following provisions:

". . . . . . . . . . . . . . . . . . . . . . . .

"(4) Provision affording insurance to the named insured with respect to

any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his permission, express or implied and within the scope of such permission, . . .''

Joseph E. Smith and Son owned and CLT, Inc. leased the semitrailer and pull trailer connected to Faria's tractor. The trailers were covered by the Mission policy. That policy afforded coverage to permissive users of the trailers. However, with respect to a nonowned automobile, such as the Faria tractor, the Mission policy by its terms was excess. The language of the respective policies reveals that Hartford provided primary coverage for both the owned tractor and the nonowned trailers while Mission provided primary coverage for the owned trailers and only excess coverage for the nonowned tractor. To summarize graphically:

| | Tractor | Trailer |
|---|---|---|
| Hartford | primary | primary |
| Mission | excess | primary |

Contrary to respondents' assertion, Insurance Code section 11580.1, subdivision (b)(4) does not compel a different conclusion. In the context of the instant case, the latter section merely required Mission to provide Faria, a permissive user of the trailers, with the same insurance coverage as that afforded to Smith and other named insureds, with respect to the *trailers*. Appellants have not denied the Mission policy provides primary coverage for the trailers. However, they have correctly noted their policy is excess as to the nonowned automobile which pulled those trailers at the time of the collision.

Generally, courts will give heed to "primary" and "excess" provisions of insurance policies. This rule is particularly applicable where the dispute is between two or more insurance carriers and the rights of policyholders or their accident victims will be unaffected by its application. (*National American Ins. Co.* v. *Insurance Co. of North America* (1977) 74 Cal.App.3d 565, 574 [140 Cal.Rptr. 828].)

For purposes of automobile liability coverage, any auto constitutes a "covered auto" within the meaning of the Hartford policy. The policy defines "auto" to include a trailer or semitrailer designed for travel on public roads. The Mission policy also defines "automobile" to include trailers or semitrailers designed for travel on public roads.

Where two automobile liability insurance policies are applicable, the terms of Insurance Code sections 11580.8 and 11580.9 will determine which policy is the underlying policy and which is the excess policy. (*National Indemnity Co.* v. *Manley* (1975) 53 Cal.App.3d 126, 130-131 [125 Cal.Rptr. 513].) Application of Insurance Code section 11580.9 turns on whether the policies cover "the same motor vehicle" within the meaning of that code section. Our courts have not previously construed these statutes in a wrongful death case involving a truck and trailer owned by different parties and insured by different carriers. The closest analogous cases have risen in the Fifth District and its predecessor district.

In *Miller* v. *Berman* (1942) 55 Cal.App.2d 569 [131 P.2d 18], the Fourth District Court of Appeal considered the liability of a semitrailer owner for damages caused by the negligence of the owners and driver of a truck/tractor to which the trailer was attached. The trial court held the trailer owner liable for wrongful death damages pursuant to the permissive use/private owner liability provisions of former Vehicle Code section 402 (now Veh. Code, § 17150). The Court of Appeal reversed, holding the trailer owner was not the owner of a "motor vehicle" within the meaning of Vehicle Code section 402 so as to render him liable for damages caused by the tractor owner/driver's negligence. The Vehicle Code defined a "vehicle" as "a device in, upon or by which any person or property is or may be propelled, moved or drawn upon a highway . . . ." The Vehicle Code defined a "motor vehicle" as "a vehicle which is self-propelled." The court held the truck/tractor was a motor vehicle and the semitrailer was a vehicle but not a motor vehicle.[3] The court concluded when the front of the semitrailer rests on the rear of the truck/tractor to be moved over the highways, the two may become one motor vehicle. The court concluded the trailer owner did not own the motor vehicle but rather a part of it which was not itself a motor vehicle. His ownership of the trailer did not make him a joint owner of any interest in the whole vehicle and under the clear language of the statute, no liability was imposed on him. *Miller* may be distinguished from the instant case because it was decided before the enactment of Insurance Code sections 11580.8 and 11580.9, does not address the insurance coverage of the respective parties, and construes only Vehicle Code sections.

In *Smith* v. *Travelers Indemnity Co.* (1973) 32 Cal.App.3d 1010 [108 Cal.Rptr. 643], this court considered the effect of multiple insurance policies in a personal injury case involving a pickup and attached horse trailer.

---

[3] "Motor vehicle," as used in the Insurance Code, includes trailers and all other wheeled vehicles trailed behind any motor vehicle as that term is defined in the Vehicle Code. (Ins. Code, § 383.6.) According to current Vehicle Code section 415, a "motor vehicle" is any vehicle which is self-propelled.

In 1966 a motorcycle operated by Parsley and Leatherwood collided with a pickup truck owned by Smith and driven by Linda Iskenderian. The pickup was pulling a horse trailer owned by Linda's father, Asan Iskenderian. At the time of the accident United Pacific Insurance had an automobile liability policy issued to Smith as named insured covering the pickup truck. The policy insured permissive users of the pickup and Linda was driving the truck with Smith's permission. Travelers had a comprehensive liability policy issued to Asan Iskenderian as named insured. The policy insured permissive users of owned "automobiles" which was defined to include trailers. The Travelers' policy provided pro rata liability coverage with other insurance except that coverage for nonowned automobiles was excess over other insurance. United ultimately settled the personal injury actions of Parsley and Leatherwood.

The trial court concluded Travelers was not obligated to defend or pay any sum toward the liability arising from the accident. The court concluded no liability attached under the Travelers' policy in connection with the horse trailer, although the policy covered its operation and use. The court held there was no evidence of negligent conduct by Linda in the operation of the trailer nor was any such negligence a proximate cause of the accident. This court disagreed, reversed the judgment and directed Travelers to pay a pro rata share of the settlements and costs. The court held the accident arose out of the use of the trailer; that Linda used the trailer by towing it behind the pickup; and that her negligent operation of the combined rig caused the accident. Because the third party plaintiffs were injured as the result of Linda's use of the trailer, the court held Travelers' excess insurance provision for nonowned automobiles did not come into play. Therefore, Travelers' coverage was primary as to the loss arising out of Linda's use of the trailer.

The *Smith* case did not cite or discuss *Miller*. In addition, *Smith* did not address or apply Insurance Code section 11580.9. That section applies only to insurance policies issued or renewed on or after November 23, 1970. (See Stats. 1970, ch. 300, § 8, p. 577; *Argonaut Ins. Co. v. Colonial Ins. Co.* (1977) 70 Cal.App.3d 608, 618 [138 Cal.Rptr. 855].) The policies in *Smith* were issued several years before the effective date of that statute.

The parties to the instant case devote substantial portions of their briefs to applying and distinguishing *Smith*. Appellants argue the *Smith* case is distinguishable on two points. First, the relationship between the tractor owner and trailer owner is different in each case. In *Smith,* the owner of the trailer provided the driver and no commercial relationship was involved. In the instant case a commercial relationship existed between Faria and CLT, Inc. and Faria provided the driver and exercised control over the

actual operation of the tractor and trailers. According to appellants, both parties expected only Faria and his drivers would be responsible for the safe operation of the rig. Second, appellant contends *Smith* should not be controlling because of California's subsequent adoption of comparative negligence. (*Li* v. *Yellow Cab. Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]; *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899].) Appellants argue the decision of the trial court requires an insurer to pay for a loss its insured did not legally cause. Appellants contend the conspicuous absence of any finding establishing negligence or liability on the part of CLT, Inc. precludes a judgment requiring Mission to pay one-half of the settlement.

Appellants cite *American Motorcycle Assn.* in support of CLT, Inc.'s cross-complaint for equitable indemnity against Faria. ■ Appellants ignore the Supreme Court's holding that a tortfeasor who has entered into a good faith settlement with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor. (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, 604.) Furthermore, appellants' assertion of comparative negligence principles is misplaced. In the lower court appellants stated they were "suing in contract on the express indemnity agreement." ■ A party on appeal is not permitted to change his position by adopting a new and different theory on appeal. Such conduct is unfair to the trial court and unjust to the opposing litigant. However, an exception to this doctrine of the theory of the case arises when there is no dispute as to the facts and questions of law alone are presented. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 281-288, pp. 4269-4275.) Respondents do not challenge appellants' change of theory on appeal as it is raised for the first time in appellants' closing brief.

Respondents contend the *Smith* decision controls the facts of the instant case. They argue the language of the policies controls coverage priority and not the activities of the truck and trailer owners. They assert the respective insurance coverages for both tractor and trailer should be deemed to provide reciprocal, primary coverage for the entire truck/trailer unit.

■ Resolution of the question at issue turns upon construction of the statutory phrase ". . . same motor vehicle in an occurrence out of which a liability loss shall arise . . . ." (Ins. Code, § 11580.9, subd. (d).) As noted above, the Fourth District in *Miller* deemed the tractor with attached trailer a "motor vehicle" within the meaning of the Vehicle Code but did not hold the trailer owner liable for the tractor owner's negligence. This court in *Smith* implicitly held a pickup truck towing a horse trailer constituted a single unit and subjected the insurance carriers of both truck and trailer to

liability. We have not found any other California case directly addressing this point.[4] The federal courts have addressed this issue in a number of diversity cases. As one federal district court has noted: " . . . [V]irtually every jurisdiction which has addressed the question has held that an accident involving a tractor-trailer unit 'arises out of' the use of both, regardless of which part of the unit was actually involved in the accident. *See, e.g., Blue Bird Body Co. v. Ryder Truck Rental*, 583 F.2d 717, 726 (5th Cir. 1978); *Insurance Company of North America v. Royal Indemnity Company*, 429 F.2d 1014, 1017-1018 (6th Cir. 1970); *Hartford Accident and Indemnity Company, Inc. v. Liberty Mutual Insurance Co.*, 277 So.2d 775, 776 (Fla. 1973); *State Automobile Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 456 F.2d 238, 240 (6th Cir. 1972); *American Fire and Casualty Co. v. Allstate Ins. Co.*, 214 F.2d 523, 524-525 (4th Cir. 1954); *Eastern Transp. Co. v. Liberty Mutual Cas. Co.*, 144 A.2d 911 (N.H.1958).

"The theory seems to be that a trailer is of no use without a tractor, and vice versa. *Hartford Accident and Indemnity Company, Inc. v. Liberty Mutual Insurance Co., supra,* at 776. But for the need to haul the trailer, the tractor would not have traveled the highway and been involved in the accident. . . ." (*Ryder Truck Rental v. U. S. Fidelity & Guaranty Co.* (E.D.Mo. 1981) 527 F.Supp. 666, 669-670.)

This conclusion is entirely compatible with this court's previous position in *Smith.*

Appellants argue, without citing authority, the scope of liability insurance coverage should only be coextensive with the tort liability of the persons or parties identified in the policy contract as insureds and no greater. ■ This argument goes to the statutory phrase " . . . an occurrence out of which a liability loss shall arise . . . ." This phrase is not defined or elaborated upon by the statute and has not been discussed in subsequent cases. The phrase is somewhat analogous to the policy provision which refers to

[4]*Employers Insurance of Wausau v. Ohio Casualty Co.* (1983) 146 Cal.App.3d 871 [194 Cal.Rptr. 535] raises the issue but does not resolve it for our purposes. There, a passenger vehicle collided with a tractor pulling two trailers of sugar beets. Ohio Casualty insured the owner of the trailers and the trailers were listed in the policy. Wausau insured the tractor owner but the tractor was not listed in the policy. The individuals in the passenger vehicle filed personal injury actions and the two carriers settled the actions with each carrier contributing an equal amount. Wausau obtained partial reimbursement from Ohio for contributions made to settlement. Ohio contended it entered the settlement agreement with Wausau on an equal basis as a result of the holding in *Smith v. Travelers Indemnity Co.* The First District Court of Appeal affirmed the judgment of reimbursement. However, the ruling was not predicated upon the holding in *Smith.* Wausau's liability pursuant to its basic policy was zero because the tractor was not listed in that policy. Wausau's coverage based on a PUC indorsement was available only as to any excess over the policy limits.

injury or damages "caused by an occurrence and arising out of the owner-ship, maintenance or use . . . of any automobile . . . ." The words "arising out of" when used in such a provision are of broader significance than the words "caused by," and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle. (6B Appleman, Insurance Law and Practice (Buckley ed. 1979) § 4317 at pp. 360-363.) The coverage of a policy for liability and damages may be effective even though there is no actual physical contact between the vehicle and the persons or property harmed. (12 Couch on Insurance (2d rev.ed. 1981) § 45:58 at p. 293.) "Arising out of the use" when utilized in the coverage or insuring clause of an automobile insurance policy, has broad and comprehensive application, and affords coverage for injuries bearing almost any causal relation with the vehicle. However, some minimal causal connection between the vehicle and accident is required. (*State Farm Mut. Auto Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 100 [109 Cal.Rptr. 811, 514 P.2d 123].)

 The record in the instant case established a "minimal causal con-nection" between the two trailers and the accident involving Childers. In light of this causal connection, and the number of jurisdictions adhering to the *Smith* view, the Mission policy should be deemed a primary policy of insurance with respect to the accident. As one federal court has aptly noted: "Where a truck and towed trailer are involved in an accident, the courts are well-advised to avoid the metaphysics and hold that the accident arose out of the use of each." (*Blue Bird Body Co.* v. *Ryder Truck Rental* (5th Cir. 1978) 583 F.2d 717, 727; quoting 7 Risjord and Austin, Automobile Liability Insurance Cases 9540.)

Since the Hartford policy describes the Freightliner tractor as an owned automobile, it shall be conclusively presumed the insurance afforded by that policy is primary and the coverage by the Mission policy is excess. Since the Mission policy describes the semitrailer and pull trailer as owned auto-mobiles, it too shall be conclusively presumed the insurance afforded by that policy is primary and the coverage afforded by Hartford is excess. (Ins. Code, § 11580.9, subd. (d).)

 Both the Hartford and Mission policies contain identical conditions relating to "other insurance." Pursuant to these conditions, each insurer must contribute toward settlement expenses in equal shares until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid. Accordingly, each insurer is liable for an equal (50 percent) share of the total settlement expense and the judgment of the trial court was correct.

## II. Did the Written Subhaul Agreement Between Faria and CLT, Inc. Affect the Insurance Coverage of the Parties?

Appellant argues the judgment is contrary to the only evidence of insurance industry practice regarding the effect of subhaul agreements. Appellant further contends Faria, Hartford and its agent breached the subhaul agreement thereby resulting in actual damage to both CLT, Inc. and Mission.

With respect to industry practice, the weight to be given the evidence is a matter committed exclusively to the trial court. When a finding of the trial court is attacked as unsupported by the evidence, the power of the appellate court begins and ends with the determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding. Where the evidence is conflicting or gives rise to conflicting inferences, the findings of the trial court will not be disturbed on appeal. (*Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1053 [143 Cal.Rptr. 415].) In the instant case, the testimony of Larry Manning, Hartford casualty underwriting manager, and William LeFay, Mission claims manager, gave rise to conflicting inferences concerning the policies and the subhaul agreement. Therefore, this court may not disturb the trial court's findings in this regard on appeal.

With respect to the allegations of breach, the provision in question is article 4, which states: "(4) Sub-Haulers shall maintain public liability, property damage, and cargo insurance at all times. A minimum of $100,000.00 each person and $300,000.00 each occurrance [*sic*] bodily injury liability, $50,000.00 property damage liability, and $2000.00 cargo insurance will be required. Carrier must be named as additional insured in these policies. Further, Sub-Hauler agrees to require his insurance carrier to place a 'Hold Harmless' clause in all policies naming Carrier, covering any incident which might arise from operations as a Sub-Hauler under the terms of this agreement." Thus, the questioned provision consists of three components. First, the subhauler must maintain specified types of insurance in particular amounts. Second, the subhauler must name CLT, Inc. as an additional insured in the specified policies. Third, the subhauler must require his insurance carrier to place a "Hold Harmless" clause in all policies naming CLT, Inc. The trial court found no breach of the subhaul agreement resulting in damages to CLT, Inc.

Appellants have not shown and we have been unable to find any failure to comply with the maintenance of specified types and amounts of insurance. Although the policy issued by Hartford did not describe CLT, Inc. as an additional insured, CLT, Inc. was clearly covered under paragraph D 3 of part 4 which states: "D. Who is insured. [¶] 3 The owner or anyone else

from whom you hire or borrow a covered auto which is a trailer is an insured while the trailer is connected to another covered auto which is a power unit . . . ." Respondents breached the subhaul agreement by failing to name CLT, Inc. as an additional insured. However, since CLT, Inc. was an insured *under the terms* of the Hartford policy, the breach must be deemed immaterial. (See *Sackett* v. *Spindler* (1967) 248 Cal.App.2d 220, 229 [56 Cal.Rptr. 435].)

Therefore, the only remaining basis for establishing a material breach of the agreement is the last component, the "Hold Harmless" clause. Appellants raise a number of arguments to show the "Hold Harmless" provision affected the insurance coverage in the instant case. However, for reasons to be stated herein, it is unnecessary and would serve no purpose to individually address these arguments. All of appellant's arguments in this regard center upon the premise that had the subhauler, Faria, complied with the "Hold Harmless" provision in the contract, CLT, Inc. and its insurer, Mission, would have been insulated from any liability arising from injuries to third parties such as Childers or his heirs. While we are not swayed by respondent's contention that the agreement was an unenforceable adhesion contract, we fail to see how the contract could be enforced as to Hartford, a "non-party" to the agreement. In fact, it would appear that neither Hartford nor Mission was made aware of the "Hold Harmless" provision until after the subject accident occurred. Appellant does not enlighten us in this regard.

More importantly, however, is the effect of application of the express terms of Insurance Code section 11580.9, subdivision (f) to the "Hold Harmless" clause of the subhaul agreement.

Insurance Code section 11580.9, subdivision (f) requires insurers to sign a written agreement before their relationships can be altered. This code section provides: "(f) The presumptions stated in subdivisions (a) to (d), inclusive, may be modified or amended only by written agreement signed by all insurers who have issued a policy or policies applicable to a loss described in these subdivisions and all named insureds under these policies." This section has been cited and discussed in relatively few cases. (*Ross* v. *Canadian Indemnity Insurance Company* (1983) 142 Cal.App.3d 396, 402 [191 Cal.Rptr. 99]; *Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co., supra,* 85 Cal.App.3d 481, 489.) Here, only CLT, Inc. and Faria signed the subhaul agreement.

Appellants contend it is not mandatory that insurers sign a written agreement before their relationships can be altered. They cite to the *Zurich-American* case which states: " . . . 'Questions of contribution between coin-

surers are decided by reference to the terms of their respective contracts, not the right to indemnification that may exist among the persons insured by the policies.' (*Universal Underwriters ·Ins. Co.* v. *Aetna Ins. Co.* (1967) 249 Cal.App.2d 144, 153 . . . ; but see *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 634 . . . [indicating that the rule in *Universal* can be altered by a prospective express indemnity agreement]; to this effect see section 11580.9 subd. (f), [permitting modification of the conclusive presumptions by written agreement].)'' (*Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co., supra,* 85 Cal.App.3d 481, ·489-490.)

Appellants apparently misunderstand the preceding quotation and the code section in the context of the instant case. Section 11580.9, subdivision (f) clearly requires a written agreement signed by all insurers who have issued policies applicable to a loss and by all named insureds under those policies. Both the Hartford policy and the Mission policy excluded coverage for liability assumed under any contract or agreement and precluded changes to the policy except by insurance company indorsement.

Neither Hartford nor Mission entered into an agreement modifying or changing the presumption created by Insurance Code section 11580.9, subdivision (d). The subhaul agreement is inadequate to change or modify this conclusive presumption because it was not signed by the insurers and by all of the insureds named in the policies. Mission cannot now complain, particularly where its policy excludes coverage for a liability assumed under any contract or agreement; it is not a party to the collateral subhaul agreement, an employee of its insured drafted the collateral agreement with an ambiguous hold harmless clause, and CLT, Inc. failed to notify its insurer of an agreement affecting policy coverage.

The subhaul agreement did not affect the Hartford and Mission coverage because of noncompliance with Insurance Code section 11580.9, subdivision (f).

The judgment is affirmed. Defendant and respondent Hartford Insurance Company shall recover its costs of appeal as against plaintiff and appellant Mission Insurance Company.

Zenovich, Acting P. J., and Hanson (P.D.), J., concurred.