[No. A018805. First Dist., Div. Four. Feb. 11, 1987.]

TRANSPORT INDEMNITY COMPANY, Plaintiff and Appellant, v. ROYAL INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Joseph D. Ryan, Jr., and Martin, Ryan & Andrada for Plaintiff and Appellant.

Richard D. Rifkind and Rifkind, Fuerch & Keyson for Defendant and Respondent.

OPINION

**SABRAW, J.**—In this case, we consider the issue of primary versus excess insurance coverage as between two insurance carriers which insured various portions of a truck tractor/trailer rig involved in an accident. We conclude that the policy which described the entire rig as an "owned" vehicle is primary and affirm the judgment.

## I. THE FACTS AND PROCEDURE

Transport Indemnity Company (Transport) wrote a policy of motor vehicle liability insurance for Orsetti Trucking Co. (Orsetti) covering vehicles operated by it. The trailer portion of a truck tractor/trailer rig driven by an Orsetti employee struck a United Parcel Service step-van, injuring the driver of the van. The truck tractor/trailer rig in question was composed of three major components: a 1974 White Freightliner truck tractor owned by Orsetti and two semitrailers owned by R & A Trucking (R & A). Orsetti had possession of the two semitrailers by virtue of a subhaul agreement with R & A which provided that Orsetti would lease the trailers and carry designated loads for R & A. The subhaul agreement required Orsetti to maintain liability insurance covering its use of R & A's trailers (the Transport policy). At the same time, R & A had its own liability insurance coverage for the two semitrailers through a policy written by Royal Insurance Company (Royal).

Transport settled the claim of the driver of the United Parcel van for its policy limit of $100,000. It then sought declaratory relief against Royal claiming a right to obtain proration of the settlement and its costs of defending Orsetti. Transport asserted that Royal was liable because it had written a $500,000 policy insuring the two semitrailers involved in the accident. Transport contended that the two policies should be interpreted as providing co-insurance (rather than primary and excess coverage) and that it was entitled to receive from Royal five-sixths of the amounts paid in settlement and defense of the injured party's claim. (Transport's policy represented one-sixth of the total of the policy limits; Transport's policy limit was $100,000 and Royal's was $500,000.) Royal took the position that its policy was excess to that of Transport. Upon a stipulated record, the trial court found Transport's coverage to be primary and Royal's to be excess. Accordingly, it entered a judgment ordering that Transport take nothing by its complaint.

## II. ANALYSIS

Transport asserts that the trial court erred in finding the Royal policy was excess and should have determined that Royal was obligated to assume a prorated share of the settlement and defense costs.

The trial court's judgment in this matter was based upon a stipulated record. ■ In such a case, interpretation of the policies in question is a matter of law which is subject to independent determination by an appellate court. (*Pacific Export Packers* v. *Chubb/Pacific Indem. Group* (1976) 57 Cal.App.3d 186, 190 [129 Cal.Rptr. 86].)

The Legislature has established certain statutory presumptions of coverage in the Insurance Code for the purpose of determining coverage disputes and minimizing coverage litigation when multiple insurance policies provide coverage after a liability loss arises. (Ins. Code, § 11580.8.[1]) Section 11580.9 contains a number of subdivisions designed to cover many common coverage dispute situations; each addresses a different set of factual circumstances and identifies which policies will be deemed primary and which policies will be deemed excess. In order to avoid the conclusive presumptions created by the statutory scheme when two or more policies are involved in a given circumstance, the insurers and the insureds must sign a written agreement to that effect. (§ 11580.9, subd. (f).)

■ Transport was the insurer of the party whose employee's negligence caused the loss. Nevertheless, it argues that it should bear only a small fraction of the loss, even though Royal's insured R & A was without fault and had specifically required Orsetti to carry insurance (the Transport policy) to cover just such a loss. To support its position, Transport relies upon Insurance Code section 11580.9 subdivision (d).[2]

Section 11580.9 subdivision (d) contains four elements: (1) the existence of two or more valid and collectible insurance policies affording coverage which (2) apply to the same "motor vehicle or vehicles" (3) in an occurrence out of which a "liability loss" arises and (4) one or more of which policies describes the motor vehicle as an "owned automobile." If those four elements are found to exist, then any policy which describes or rates the motor vehicle as an "owned automobile" bears primary responsibility for the loss and any other policy is excess. To begin with, the first and third elements are readily apparent in our case: there are obviously two policies of valid and collectible insurance (the first element) and an occurrence out of which a liability loss has arisen (the third element). Next, we must determine whether the Transport and Royal policies apply "to the same motor vehicle or vehicles." If they

---

[1]All further statutory references are to the Insurance Code.

[2]Subdivision (d) of section 11580.9 provides in relevant part: "[W]here two or more policies affording valid and collectible liability insurance apply to the same *motor vehicle or vehicles* in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the *motor vehicle* is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess." (Italics added.)

do, we must then ascertain whether either or both policies describe that motor vehicle or vehicles as an "owned automobile." If all four elements are present, we must apply the conclusive presumption created by section 11580.9 subdivision (d) to determine coverage priority between the policies and insurers.

In order to proceed with our analysis, we must first ascertain the meaning of the phrases "motor vehicle or vehicles" and "motor vehicle" contained in consecutive clauses of section 11580.9 subdivision (d). Prior to 1984, the phrases in the two consecutive clauses were identical as each contained only the words "motor vehicle". In 1984, the Legislature amended subdivision (d) and added the words "or vehicles" to the phrase in the first clause. (Stats. 1984, ch. 461, § 1, p. 227.)

Royal suggests that the purpose of the 1984 amendment was to make it clear that it is the policy on the *motor* vehicle which is presumed to be primary and that any policy on a *nonmotorized* vehicle like a semitrailer is presumed to be excess. It reaches this conclusion by noting that the Legislature chose not to insert the words "other vehicles" in the latter clause of section 11580.9, subdivision (d). Royal also points to the fact that the amendment was passed by the Legislature only two months after the Court of Appeal decided *Mission Ins. Co.* v. *Hartford Ins. Co.* (1984) 155 Cal.App.3d 1199 [202 Cal.Rptr. 635], which interpreted section 11580.9 subdivision (d) in a similar context of a truck tractor/trailer rig combination subject to a subhaul agreement wherein the court held that the phrase "motor vehicle" included "trailers and all other wheeled vehicles trailed behind any motor vehicle as that term is defined in the Vehicle Code." (*Id.,* at p. 1209, fn. 3.) As a result, the court found the insurer of the trailers and the insurer of the truck tractor bore primary coverage responsibility. In Royal's view, by amending the statute, the Legislature was seeking to reinstate the rule of *Miller* v. *Berman* (1942) 55 Cal.App.2d 569 [131 Cal.Rptr. 18], which Royal characterizes as holding that if the vehicle described by a policy of insurance is not a motorized vehicle (such as a semitrailer), the coverage provided by that policy will be excess over the insurance coverage for the motor vehicle towing it. We find Royal's interpretation unpersuasive for two reasons.

The legislative bill which resulted in the 1984 amendment of section 11580.9, subdivision (d), Assembly Bill No. 3192, was introduced months *before* the *Mission* decision was rendered, thereby eliminating any cause and effect scenario. Second, the Legislative Counsel's digest which accompanied Assembly Bill No. 3192 stated: "Existing law provides, with certain exceptions, that where 2 or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out

of which a liability loss arises, it is conclusively presumed that the insurance afforded by the policy in which the motor vehicle is described or rated as an owned automobile is primary and the insurance afforded by any other policy or policies is excess. . . .

*"This bill would specify that the aforementioned provision is applicable to motor vehicles as well as a single motor vehicle."* (Italics added.)

In view of the foregoing statement, the only reasonable interpretation of the 1984 amendment is that the Legislature's addition of the words "or vehicles" was intended to reference the plural of "motor vehicle." ▮ We hold, therefore, that the phrase "motor vehicle or vehicles" in section 11580.9, subdivision (d), simply means one or more motor vehicles. We next turn to the question of whether the policies in the present case afforded coverage to "the same motor vehicle or vehicles."

Transport points to the holding in *Mission Ins. Co.* v. *Hartford Ins. Co., supra,* 155 Cal.App.3d 1199, and contends that it should be applied in this case to hold that both the Transport policy and the Royal policy apply to "the same motor vehicle," namely, the combined Orsetti truck tractor/R & A trailer rig. As we next explain, although we agree with the *Mission* court's conclusion on that point, we reach a different result than reached in that case.

In *Mission,* after surveying a number of California and federal court diversity decisions which involved multiple insurance policies in similar factual settings, the court explained that most courts have reasoned that an accident involving a truck tractor/trailer rig arises out of the use of both the truck tractor and the trailer, irrespective of what part of the rig is physically involved in the accident. (*Id.,* at pp. 1211-1213.) Applying that principle and section 11580.9 subdivision (d), the *Mission* court held that each of the insurers before it bore primary coverage because each policy described or rated one portion of the combined truck tractor/trailer rig as an "owned automobile." (*Id.,* at p. 1213.)

We agree that an accident which involves a truck tractor/trailer rig should be viewed as arising out of the use of all components of the rig. We hold, therefore, that the Transport policy and the Royal policy both applied to the "same motor vehicle." However, we do not agree that this holding mandates that both Transport and Royal bear primary coverage in this case.

In *Mission,* one policy described the trailers as "owned automobiles," while the other described the truck-tractor as an "owned automobile." (*Id.,* at p. 1213.) Neither policy described the entire rig as an "owned

automobile." ▮▮▮▮▮ By contrast, in the case before us, the Transport policy described and rated *both* the truck tractor and the trailers as "owned automobiles,"[3] while the Royal policy described *only* the trailers as "owned automobiles." This situation is not mere happenstance: Transport charged Orsetti and received an additional premium of over $36,000 to insure a group of nine trailers which included the two trailers involved in the accident. Transport charged the additional premium in recognition of the fact that it was assuming the risk of providing primary coverage on the trailers when they were towed by another "owned automobile" listed on the policy endorsement it provided to Orsetti. On the other hand, the premium charged R & A by Royal was undoubtedly based on the fact that Royal was assuming primary coverage for the trailers when pulled by a truck tractor owned by R & A, but only excess coverage when the trailers were being pulled by another vehicle. In such a factual setting, we have no difficulty in concluding that the Transport policy, because it described all components of the truck tractor/trailer rig as "owned automobiles" provides primary coverage while the Royal policy is excess, and we so hold. In our view, this holding most closely implements the Legislature's mandate that the policy which describes the motor vehicle as "an owned automobile" shall bear primary coverage while at the same time leading to a fair and just result.

The judgment is affirmed.

Anderson, P. J., concurred.

**POCHÉ, J.,**—I respectfully dissent.

To those whose professional lives allow them the privilege of reading daily the Insurance Code[1] it is ingrained lore that the writers of that document in sections 11580.8 and 11580.9 went out of their legislative way to put in letters six feet tall that they were upset with the volume of litigation identical to that at hand which was constipating the court systems, i.e., coverage litigation among and between insurance carriers. For the purpose of minimizing coverage litigation a statutory scheme of conclusive presumptions was established. (§ 11580.8; *Lumbermens Mutual Casualty Co.* v. *Agency Rent-A-Car, Inc.* (1982) 126 Cal.App.3d 764, 767-768 [180 Cal.Rptr. 546].)

---

[3]Transport argues that it never insured the two R & A trailers and that the nine references to "unidentified semi-trailer" in its fleet endorsement merely reflect the fact that the trailers actually owned by Orsetti (i.e., not leased like the R & A trailers) were so old they could not be identified in any other manner. We find this assertion totally unconvincing. Nothing precluded Transport from describing Orsetti's own trailers by their California Department of Motor Vehicles identification numbers, if such references were truly intended to refer to only those trailers and not trailers used by Orsetti, but belonging to someone else.

[1]Unless otherwise indicated, all further statutory references are to the Insurance Code.

Today's decision insures that the Legislature's chance of minimizing such litigation is minimal. It guarantees that despite the clear wording of the statute involved and the interpretative case authority, gossamer distinctions should be found, ad hoc fairness determinations should be made and litigation should be encouraged.

The only question as to which there is disagreement in this court is whether the Orsetti rig—Orsetti's tractor and the two R & A trailers—constitutes "the same motor vehicle" within the meaning of section 11580.9, subdivision (d). That statute applies the conclusive presumption that a policy which describes or rates a vehicle provides primary coverage.[2] The Royal policy, issued to R & A Trucking Co. (R & A), describes four flat bed trailers, two of which the trial court found to be the trailers involved in the accident. That policy states, however, that its coverage will be excess whenever "a covered auto which is a trailer is connected to another vehicle" not owned by the insured. Transport's policy, issued to Orsetti, *describes* in its fleet indorsement the Orsetti-owned tractor involved in the accident and some nine entries for "Unidentified Semi-Trailer." Since the Royal policy *describes* the trailers as owned automobiles, is it conclusively presumed to provide primary coverage of the trailers, despite the express language of the policy? The statutory scheme of section 11580.9 compels the answer: yes. The statute's effect is to make Royal and Transport primary coinsurers of the trailers and Transport a primary insurer of the tractor. (§ 11580.9, subd. (d); *Mission Ins. Co.* v. *Hartford Ins. Co.* (1984) 155 Cal.App.3d 1199, 1213 [202 Cal.Rptr. 635].)

The majority notes language in the *Mission* opinion to the effect that the Hartford policy described only the tractor as an "owned automobile" while the Mission policy described both the semitrailer and the pull trailer as "owned automobiles." (*Id.,* at p. 1213.) On this basis the majority purports to distinguish the instant fact pattern. They explain that in the case at hand "the Transport policy described and rated *both* the truck-tractor and the trailers as 'owned automobiles.' " (Maj. opn., *ante,* pp. 255-256.) They reach this conclusion by finding that the nine unidentified trailers listed in the Transport policy indorsement were trailers owned by R & A. The indorsement does not in any way identify these trailers, a fact from which the majority concludes the trailers could not have been other old trailers owned by Orsetti listed as "unidentified" because they were unidentifiable. (*Ibid.*) Whatever the rightness or wrongness of this factual conclusion (which they

---

[2]Section 11580.9, subdivision (d) provides in pertinent part: "where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

buttress by a gratuitous suggestion as to how Orsetti could have identified its owned trailers had it been intending to insure them) the fact remains that, even assuming the unidentified trailers were those belonging to R & A, this coverage pattern is exactly the pattern of *Mission.*

In *Mission* the Hartford policy covered the tractor and by indorsement "two unidentified semitrailers and two unidentified pull trailers." (*Mission Ins. Co.* v. *Hartford Ins. Co., supra,* 155 Cal.App.3d at p. 1203.) In *Mission* the Hartford policyholder was the owner of the tractor who—like Orsetti in the case at hand—had entered into a subhaul agreement with the party in possession of the trailers. (*Ibid.*) Pursuant to that agreement the owner of the tractor caused his insurance agent to obtain for the possessor of the trailers a certificate of insurance coverage and the indorsement covering the unidentified trailers from his insurer, Hartford. (*Ibid.*) Thus, the policy issued to the tractor owner in *Mission* "covered the Freightliner tractor and any trailers attached to the tractor at the time of the accident." (*Id.,* at p. 1204.)

I can find absolutely no way to say that unidentified trailers listed in the indorsement to the Hartford policy which insured the tractor in *Mission* are in any way different from the unidentified trailers listed in the policy indorsement to the Transport policy which insured the tractor here. *Mission* implicitly concluded that such trailers were not "owned automobiles." (*Id.,* at p. 1213.) On precisely the same facts the majority concludes that similar unidentified trailers are "owned automobiles." (Maj. opn., *ante,* p. 256.) This is, I submit, nothing other than a factual finding masquerading as a legal conclusion. It is, furthermore a conclusion derived from an exceedingly sparse factual record.

The majority asserts, without evidence in the record, that Transport charged the additional premium in recognition of the fact that it was assuming the risk of providing primary coverage on the trailers and that "the premium charged R & A by Royal was undoubtedly based on the fact that Royal was assuming primary coverage for the trailers when pulled by a truck tractor owned by R & A, but only excess coverage when the trailers were pulled by another vehicle." (Maj. opn., *ante,* p. 256.) Whatever the truth of the matter, these statements are after the fact mindreading.

The majority defends its result as "fair" and "just." I render no opinion as to the fairness or unfairness of their result, because that choice is not mine to make. The Legislature, to inject predictability into such disputes, has mandated the presumptions set out in section 11580.9. The majority undermines the clear mandate of the Legislature by creating shifting definitions of the terms "owned automobile." Because the majority's holding is in

conflict with the earlier opinion in *Mission Ins. Co.* v. *Hartford Ins. Co., supra,* 155 Cal.App.3d 1199, I cannot concur in it. I would reverse the judgment.

A petition for a rehearing was denied March 12, 1987. Poché, J., was of the opinion that the petition should be granted. Appellant's petition for review by the Supreme Court was denied April 30, 1987.