COMMERCIAL UNION INSURANCE COMPANY, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

No. C–77–1427 AJZ.

United States District Court, N.D. California.

Dec. 6, 1984.

Jacques M. Adler, San Francisco, Cal., for plaintiff.

Donald D. Howard and Vincent Galvin, Jr., San Jose, Cal., for defendant.

MEMORANDUM OPINION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT TO LIMIT DAMAGES BASED ON EQUITABLE DEFENSE

ZIRPOLI, District Judge.

■ This is an action by Commercial Union Insurance Company against Ford Motor Company for equitable indemnity with respect to a portion of the sum of $2,875,000 which Commercial paid to a personal injury plaintiff, John Meyers, who had obtained a judgment in the amount of $3,250,000 against Commercial's insured, Haberfelde Ford. Ford has raised, in its amended answer, several equitable defenses which are the basis of Ford's motion for summary judgment or partial summary judgment limiting damages, and all of which are based upon Ford's contention that Commercial's payment, which was in excess of its policy limits, was made in order to avoid a "bad faith" action by its insured for Commercial's failure to accept various settlement demands which were within the $500,000 policy limits.[1] For the reasons set

---

1. In its eighth affirmative defense, Ford alleges that Commercial acted as a "volunteer" in making the payment in excess of its policy limits. In the ninth, Ford alleges that Commercial is "equitably estopped" from maintaining this action because its payment was made "in settle-

forth below, the court concludes that Ford's equitable defenses are viable and that Commercial may not seek indemnity for that portion of its payment which exceeded the $500,000 policy limit in the policy issued to Haberfelde Ford.[2]

*Factual Background*

A personal injury action against Haberfelde Ford and Ford Motor Company was brought by John Meyers, who had been severely injured in a one-car automobile accident which occurred in Oregon in 1969. Meyers was rendered a quadriplegic when the passenger door of the car opened, causing him to come partially out of the car (his seat belt prevented him from being thrown completely out of the car) and permitting the door to slam shut on him as the car rolled. Meyers' wife, who was driving the car at the time of the accident, suffered only minor injuries. Meyers initially alleged that Ford had produced a defectively designed or manufactured door latch or lock, and that Haberfelde Ford, to which the Meyers had taken the car shortly before the accident for several reasons, one of which was that the passenger door was not locking properly, had been negligent in making the repair. On the eve of trial, however, Meyers' attorney dismissed the

complaint against Ford for a waiver of costs in "substantially a tactical maneuver"[3] after he became convinced that Ford would not contribute anything towards settlement. Before Ford was dismissed, Meyers had made a settlement demand of $150,000, but no settlement was reached, due in part to Ford's unwillingness to contribute to the settlement. After Ford's dismissal, Meyers' settlement demand remained at $150,000 for a time, but after defense counsel for Haberfelde (who had been retained by Commercial pursuant to its obligations under the insurance contract) did not meet this demand, it was withdrawn.[4] Subsequently, during the course of the trial, plaintiff made a settlement demand of $350,000 and the insured sent a mailgram to Commercial demanding that it settle the case within Haberfelde's policy limits. Commercial rejected this demand and the jury returned a $3,250,000 verdict against Haberfelde. After the trial court denied a defense motion for a new trial, Commercial was able to settle the case by paying $2,875,000 to Meyers while Haberfelde's appeal was pending. The present action was then brought by Commercial for partial indemnity from Ford with respect to that payment,[5] plus interest

ment of a potential action for bad faith." In the tenth, Ford alleges that Commercial has "unclean hands" with respect to the payment in excess of policy limits, and in the eleventh, Ford alleges that to permit Commercial to recover the amount which it paid in settlement of the potential bad faith action would be "against the public policy" of California.

2. Ford's motion and the court's holding are based upon California law. In reaching its conclusion the court rejects Ford's alternative argument that the law of Washington or Oregon, not of California, should control the question of the right to indemnity. California has an interest in applying its indemnity law, which allows partial indemnity based upon comparative fault, to this action. Commercial's insured, Haberfelde, is a California resident, the underlying personal injury action against Haberfelde was tried in a California court, and Haberfelde's negligence in repairing the car, upon which the judgment against it was rendered, took place in California.

3. *Commercial Union Ins. Co. v. Ford Motor Co.,* 640 F.2d 210, 213 (9th Cir.1981).

4. In support of its motion for summary judgment Ford has introduced evidence which, being uncontroverted by admissible evidence *, establishes that counsel retained by Commercial had authority from Commercial to settle for the $150,000 demand, but that instead he assured plaintiff's counsel that he had authority only for $125,000. When the $125,000 offer was rejected, defense counsel then tried to settle for $150,000, but was told by plaintiff's counsel that "the boat had left the dock." *See* Deposition of James Boccardo at 8, line 27.

* Exhibits 1 through 4 to plaintiff's opposition brief are wholly unauthenticated and contain inadmissible hearsay concerning the discussions between counsel, and Ford has raised a timely objection to consideration of that evidence.

5. Commercial also sought to recover a portion of its $73,523.55 in defense costs incurred in the personal injury action, but in response to the court's request for briefing on this issue, Commercial has conceded that *Davis v. Air Technical Industries,* 22 Cal.3d 1, 7, 148 Cal.Rptr. 419, 582 P.2d 1010 (1978), bars it from seeking partial

from the date of payment (August 5, 1974) at the rate of 7% per annum.

*Commercial's Failure to Settle the Meyers Claim Within the Policy Limits Breached Its Duty to Haberfelde As a Matter of Law*

Commercial first attacks Ford's motion for summary judgment or partial summary judgment limiting damages on the grounds that there is a triable issue of fact as to whether its failure to settle the Meyers case within Haberfelde's $500,000 policy limit was a breach of its duty to protect its insured from a substantial likelihood of recovery in excess of the policy limit. *See Johansen v. California State Auto Assn., Etc.*, 15 Cal.3d 9, 16, 123 Cal.Rptr. 288, 538 P.2d 744 (1975). While Commercial is correct that this is ordinarily a triable issue of fact, in appropriate cases this question may be resolved on summary judgment. *See e.g., Continental Cas. Co. v. United States Fid. & Guar. Co.*, 516 F.Supp. 384, 389–91 (N.D.Cal.1981). In support of its motion, Ford has submitted substantial evidence to support a finding that Commercial's failure to settle the case within policy limits was unreasonable as a matter of law in view of the substantial likelihood of recovery in excess of those limits. Commercial has not countered Ford's showing by any evidence which is sufficient to raise a triable issue of fact.

Ford has shown that prior to the commencement, and throughout the trial of the personal injury action, plaintiff's settlement demand was at or below the policy limits. The reasonableness of these demands is inferentially confirmed by the fact that an excess verdict of $3,250,000 was ultimately rendered by the jury and confirmed by the trial court. *See Crisci v. Security Ins. Co.*, 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173 (1967); *Continental Cas. Co.*, 516 F.Supp. at 391.

Prior to the commencement of trial, Commercial was aware that it was to be the sole defendant and that at least one expert would testify that it was the failure of the locking mechanism which allowed the passenger door to come open. The car had been taken to Haberfelde Ford for repairs, including the repair of the passenger door which was not locking properly, shortly before the accident. In the words of defense counsel, Haberfelde's attempts to repair the door were "becoming quite important in this case."

Commercial's claims personnel knew that Meyers' injuries were very severe, rendering him a quadriplegic, that the opening of the door "was the cause of his serious injuries," and that the "other door did not come open and the other occupants were only slightly injured." In the words of Commercial's Assistant Regional Manager, the "door did not cause the accident, but its coming open resulted in Meyers' extensive injury."

Commercial was also fully aware that a jury verdict "could be much larger" than $500,000 and "would not be inconsistent with some of the jury verdicts which are being passed out today." Nevertheless, Commercial failed to meet plaintiff's initial demand of $150,000 before it was withdrawn, and failed to meet the subsequent demand of $350,000, even though its insured had demanded that the case be settled within the policy limits after observing the course of the trial and concluding that it was not going well for the defense.

■■ Under California law, an insurer "in deciding whether a claim should be compromised, must take into account the interest of the insured and give it at least as much consideration as it does its own interest." *Commercial Union Assurance Co. v. Safeway Stores, Inc.*, 26 Cal.3d 912, 917, 164 Cal.Rptr. 709, 610 P.2d 1038 (1980). The insurer is not permitted to "gamble" at the expense of the insured's interest by refusing to settle a case within the policy limits "when there is a substantial likelihood of recovery in excess of those limits," and if it does, it will be liable to the insured

indemnity for its defense expenses which were incurred in defending against allegations of its own negligence.

for the *full* amount of any excess verdict, as well as any consequent economic loss, emotional distress, or physical injury. *Murphy v. Allstate Ins. Co.,* 17 Cal.3d 937, 941, 132 Cal.Rptr. 424, 553 P.2d 584 (1976). Punitive damages against the insurer may also be awarded. *Id.* at 942, 132 Cal.Rptr. 424, 553 P.2d 584.

██ The facts which Ford has properly presented to the court in support of its motions are sufficient to establish, as a matter of law, that Commercial's refusal to settle the Meyers claim within the policy limits of its insured was unreasonable and in breach of its implied-in-law duty to protect the insured from exposure to liability in excess of those limits.

*The Equitable Defenses Raised by Ford Warrant Limiting the Amount For Which Commercial May Seek Partial Indemnity to Its Policy Limit of $500,000*

The uncontroverted evidence before the court shows that Commercial paid Meyers an amount in excess of the policy limits in order to avoid a "bad faith" action by its insured which would have exposed Commercial to an even greater liability. As noted above, an insured who proves a breach of the duty to settle within policy limits may recover damages for economic losses and emotional distress caused by the breach, as well as punitive damages, in addition to the full amount of the excess verdict rendered against it. Commercial and its reinsurers, who reimbursed Commercial for a portion of the $2,875,000 paid to Meyers, were aware that Haberfelde's assets were insufficient to satisfy the verdict that had been rendered against it, and that Meyers was threatening to foreclose upon Haberfelde in order to satisfy the judgment. Haberfelde's president had been "contacted frequently by various creditors concerning the continued solvency of his Ford Dealership," and he was "nervous" about the outstanding excess verdict. Under these circumstances, Commercial, in consultation with its reinsurers "agreed to save the insured from any foreclosure ac-

tion providing he did not assign the bad faith action and afford us an opportunity to negotiate with the Plaintiff's attorney." This decision was made "in order to maintain control of the case and preclude plaintiff's attorney ... from getting an assignment from the insured which would give [him] a clear shot at CU for the full amount of the excess verdict." It was also "contemplated that by standing behind the insured CU should be able to get an assignment from the insured in order to go against the Ford Motor Company ...."

██ Thus, it is clear that the liability which *Commercial* incurred, and which was the true basis for its payment of $2,375,000 above its policy limits, was the result of Commercial's *own* breach of its duty to its insured. Ford contends that it is inequitable and against public policy to permit Commercial to recover from Ford a portion of that excess payment, and this court agrees. Accordingly, Commercial will be permitted to seek indemnity from Ford only with respect to the $500,000 which it was obligated to pay on behalf of Haberfelde under the insurance contract.

Commercial argues that Ford cannot successfully raise these equitable defenses under California law because an insurer's duty to accept a reasonable settlement within the policy limits of its insured runs only to the insured, and under certain circumstances to a claimant, not to a joint tortfeasor such as Ford. Commercial cites cases which concededly hold that the *right to sue* an insurer for breach of its implied-in-law covenant to protect the insured from exposure to liability in excess of policy limits is restricted. Thus, in *Murphy v. Allstate,* the California Supreme Court spoke of the duty to settle as "running to the insured and not to the injured claimant,"[6] and therefore held that a judgment creditor who had received an excess verdict in a wrongful death action (and who had not taken an assignment of the insured's claim) had no "right to recover from the insurer for breach of the duty to settle."

**6.** 17 Cal.3d at 941, 132 Cal.Rptr. 424, 553 P.2d 584.

*Id.* at 944, 132 Cal.Rptr. 424, 553 P.2d 584. The court stated that "[a] third party should not be permitted to enforce covenants made not for his benefit, but rather for others." *Id.* In *Royal Globe Ins. Co. v. Superior Court*, 23 Cal.3d 880, 153 Cal. Rptr. 842, 592 P.2d 329 (1979), the court limited the effect of *Murphy* somewhat by holding that the California Unfair Practices Act (Ins.Code § 790 et seq.) created a *statutory* cause of action by which a third party *claimant* could sue an insurer for violating the insurer's duties under the statute. The court held that the statute "was intended to prohibit unfair settlement practices by insurers directed against both claimants and insureds." *Id.* at 888, 153 Cal.Rptr. 842, 592 P.2d 329. Commercial argues that since Ford is neither an insured nor a claimant with respect to Commercial, but rather is a joint tortfeasor of Commercial's insured, Ford cannot raise Commercial's unreasonable refusal to settle the Meyers claim within policy limits as a defense to Commercial's claim for equitable indemnity.

■ While the court agrees that California law imposes no duty to settle upon Commercial which could serve as a *basis for suit* by Ford, it does not follow that Ford cannot raise Commercial's breach of duty to its insured to settle within policy limits *as a defense* to Commercial's present claim for equitable indemnity.[7]

The uncontroverted facts demonstrate that to the extent Commercial made a payment above its policy limits in order to settle the Meyers claim, it did so in order to avoid liability for *its own* breach of the duty which it owed to its insured. Absent that breach, Commercial's payment would

not have exceeded $500,000. Whether Commercial is considered a "volunteer" with respect to the excess payment, or whether it is considered to have "unclean hands" as to that portion, it is inequitable and against public policy to permit Commercial to shift onto Ford a portion of costs which are attributable to Commercial's own breach of the duty owed to its insured. Had Commercial failed to obligate itself for the entire amount of the excess verdict, it is clear that it would have faced a "bad faith" action by its insured, and the recovery would have equalled or exceeded the excess verdict that had been rendered against Haberfelde. By voluntarily making a payment in excess of its contractual obligations under the insurance policy in order to settle the Meyers claim, Commercial sought to transform this impending bad faith action into one for which it could seek indemnity from Ford.[8] It is a well settled principle of equity that substance prevails over form. *See* 7 Witkin, *Summary of California Law*, Equity § 4 (8th ed. 1974); California Civil Code § 3528. The court holds that Commercial's procedural maneuvering should not permit it to obtain indemnity as to that portion of the $2,875,000 payment by Commercial which was made in settlement of, or in order to avoid, a bad faith action by its insured. Thus, Commercial will only be permitted to seek indemnity with respect to the $500,000 which it was contractually obligated to pay on behalf of its insured whether or not it breached its duty to settle within policy limits.

Ford has argued that Commercial's right to indemnity should be limited to either

---

**7.** The fact that Commercial, in addition to being subrogated to Haberfelde's indemnity claim, obtained a written assignment of the claim will not allow it to circumvent equitable limitations on its right to equitable indemnity. The California Supreme Court stated in *Meyers v. Bank of America*, 11 Cal.2d 92, 94, 77 P.2d 1084 (1938), that "a formal, written assignment of a claim ... adds nothing to the enforceability by the assignee" of a cause of action for equitable subrogation, and that such an action "is subject to the same defenses as though no assignment

thereof of any sort had been made." "[O]ne who asserts a right of subrogation, whether by virtue of an assignment or otherwise, must first show a *right in equity* to be entitled to such subrogation...." *Id.* at 96, 77 P.2d 1084.

**8.** Commercial could not have sought indemnity from Ford for any portion of a judgment rendered against it on a "bad faith" claim by its insured because Ford was not a joint tortfeasor with respect to that breach of duty.

$350,000 or $150,000, which Commercial could have settled the case for during trial. The court rejects this contention on the ground that there is no inequity in permitting Commercial to seek partial indemnity with respect to any payment up to its policy limits because Commercial was contractually obligated to make such payment irrespective of whether or not it had breached its duty to settle. Commercial owed no duty to its insured, much less to a joint tortfeasor such as Ford, to settle for the lowest amount possible. If Commercial had settled the case for $500,000, or if the jury's verdict had been for that amount, Commercial would have been entitled to bring this action for partial indemnity with respect to the entire $500,000. The fact that Commercial breached the duty to settle which it owed to Haberfelde and consequently paid an amount in excess of its policy limits in order to avoid a "bad faith" action only makes the shifting of costs in this indemnity action inequitable with respect to that portion of the payment attributable to Commercial's tortious breach of duty, as opposed to its contractual obligations. Thus, while the court agrees with Ford's contention that it is inequitable and against public policy to permit Commercial to require Ford to bear a portion of the cost solely attributable to Commercial's own wrongful failure to settle the Meyers claim, Commercial's obligation to pay up to and including $500,000 on behalf of its insured was not dependent upon any wrongful conduct by Commercial.

The court emphasizes that its holding is premised upon the conclusion that it would be inequitable and against the public policy of California to permit Commercial to shift to Ford a portion of the liability which Commercial incurred only because of its own wrongful conduct with respect to its insured. This holding is *not* in any way based upon a duty of an insurer or its insured owed to joint tortfeasors of the insured to settle a claim for a reasonable amount. Thus, the defenses which Ford has raised to this action by Commercial would not have been available in an action by Haberfelde because Haberfelde, unlike Commercial, would have been a joint tortfeasor with Ford with respect to the *entire* obligation upon which its payment was based. Thus, the court's holding is not in conflict with the decision in *Commercial Union Assurance Co. v. Safeway Stores*, 26 Cal.3d 912, 164 Cal.Rptr. 709, 610 P.2d 1038 (1980), holding that an insured has no duty to accept a settlement in order to avoid or minimize the exposure of a third party [in that case an excess insurer] to a liability.

*Conclusion*

Since the court has found as a matter of law that Commercial breached its duty to settle within policy limits, and that it would be inequitable to permit Commercial to recover, in an action for equitable indemnity or based upon an assignment, such portion of its damages which are solely attributable to its own wrongful conduct with respect to which Ford was not a joint tortfeasor, Commercial's claim for damages shall be limited to $500,000 (plus accrued interest to the extent applicable). As a result of this ruling, there are no issues relating to Ford's equitable defenses which remain to be tried. Consequently, the trial shall be confined to the issues relating to whether Ford produced a defectively designed or manufactured automobile and whether any such defects were a proximate cause of the injuries suffered by John Meyers.

SO ORDERED.