**OCCIDENTAL FIRE AND CASUALTY COMPANY OF NORTH CAROLINA, Plaintiff,**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY; Through Transport Mutual Insurance Association, Ltd.; Through Transport Indemnity; Does 1 through 10 inclusive; Johnson, Ralph Rokeby, a Representative Underwriter as Lloyd's London; Warrilow, Cyril J., a Representative Underwriter at Lloyd's London, Defendants.**

No. C–85–2130–CAL.

United States District Court, N.D. California.

March 31, 1987.

As Amended Aug. 11, 1987.

---

Kincaid, Gianunzio, Caudle & Hubert, Victor J. Gianunzio, A Professional Corp., Oakland, Cal., for plaintiff.

Sam D. Delich, Robert A. Mehaffey, Jr., Graham & James, San Francisco, Cal., for Transport Mut. Ins.

Richard S. Gilardi, Stephen W. Owens, Lynch, Loofbourrow, Helmenstine, Gilardi & Gurmmer, San Francisco, Cal., for American Motorists Ins. Co.

William F. Campbell, Steinhart & Falconer, San Francisco, Cal., for Johnson and Warrilow.

## AMENDED OPINION AND ORDER

LEGGE, District Judge.

Plaintiff Occidental Fire & Casualty Company of North Carolina (Occidental) brings this action seeking contribution from other insurers for a loss of $750,000 resulting from a traffic accident involving its insured. Occidental claims that the defendant insurers also cover the loss under the terms of their policies or under mandatory provisions of the California Insurance Code.

This court has jurisdiction because the dispute involves a claim in excess of $10,000 and there is complete diversity of citizenship between plaintiff Occidental and all defendants. 28 U.S.C. § 1332.

The case is now before the court on (1) Occidental's motion for summary judgment, (2) defendant American Motorists' cross motion for summary judgment, (3) defendant Through Transport's cross-motion for summary judgment, and (4) the Lloyd's defendants' cross-motion for summary judgment. This court has considered the moving and opposing papers, the record, the arguments of counsel, and the applicable authorities. The court is of the opinion that there are no genuine issues of material fact as to the issues decided below. Those issues can be resolved as a matter of law based upon the undisputed facts and the interpretations of the language of the policies.[1]

## I.

### UNDISPUTED FACTS

On May 11, 1981, a tractor-trailer operated by Hong Kong Freight Lines, Inc. (Hong Kong) came unhitched and collided with an automoblie driven by Ruth Mansergh, causing bodily injuries to her and property damage to her automobile. The tractor was owned and operated by Hong Kong. It is agreed that a defect in the tractor or its operation caused the accident. The tractor was hauling containerized freight on a trailer. The trailer was owned by Uni-Flex Container (Flexi-Van).[2] It had been leased to Neptune Orient Lines, Ltd. (Neptune), who also owned the container on the tractor. Neptune had leased the container and subleased the Flexi-Van trailer to Hong Kong.

---

1. The court acknowledges the assistance of Carl L. Blumenstein in the preparation of this opinion.

2. Uni-Flex Container is a division of Flexi-Van, Inc.

As part of its lease agreement with Flexi-Van, Neptune agreed to hold Flexi-Van harmless for any liability arising out of the use of the Flexi-Van trailer. Similarly, when Neptune leased the trailer and container to Hong Kong Freight, Hong Kong agreed to hold Neptune harmless for any liability resulting from their use.

Mansergh sued Hong Kong in a California state court and Occidental assumed Hong Kong's defense under the automobile liability policy Occidental had issued to Hong Kong. That policy has a limit of $250,000.

On the first day of trial of the state court action, Mansergh offered to settle her case for $225,000, $25,000 less than Occidental's policy limit. Occidental refused the settlement demand and tried the case. The jury returned a verdict of $850,000 for plaintiff Mansergh and against Hong Kong. The trial court denied Hong Kong's motions for new trial and remittitur. Occidental noticed an appeal, and then settled with Mansergh for $750,000. Occidental paid the full amount of that settlement.

## II.

### THIS ACTION

Occidental then filed this action seeking contribution from defendants: (1) American Motorists Insurance Company (American Motorists),[3] (2) Through Transport Mutual Insurance Association, Ltd. (Through Transport), and (3) Ralph Rokeby Johnson and Cyril J. Warrilow, as Representative Underwriters at Lloyd's, London (Lloyd's). American Mutual had issued a policy to Flexi-Van which covered the trailer, and Lloyd's had also issued two policies to Flexi-Van covering the trailer. Through Transport had issued a policy to Neptune insuring the container.

Occidental does not dispute that its insured—either Hong Kong or its employee driver [4]—was the ultimate tortfeasor in the

accident. Consequently, Occidental does not dispute that its policy provides coverage for the accident and Occidental does not seek contribution on the basis of joint liability in tort.[5] Occidental does assert that under the terms of the policies of the other insurers, or under California law, the defendants are required to contribute to the $750,000 loss.

As a framework for this decision, the court considers the issues in the following order. First, the court must determine whether any of the policies issued by the defendants provide coverage to Hong Kong, the ultimate tortfeasor. Second, if there is no coverage under the language of one of the policies issued by the defendants, the court must then determine whether Hong Kong nevertheless has coverage from that insurer under the "permissive user" doctrine of California law. Third, if at least one of the defendant insurers does provide coverage, then the court must determine how the loss is to be allocated among the insurers. Finally, if any of the defendant insurers does cover, the court must determine whether Occidental's alleged bad faith in the handling of the state court suit precludes it from recovering from the defendant insurer.

## III.

### POLICY COVERAGE

A. *The Through Transport Policy*

Through Transport issued its policy to Neptune effective January 1, 1981. By weaving through the certificate, endorsements and rules of the policy, the parties arrive at conflicting views regarding the scope of its coverage. Occidental claims that the policy provides coverage here. Through Transport argues that its policy is a special marine multiperil policy, which specifically excludes coverage for liability

3. American Motorists was incorrectly sued in this action as Lumbermens Mutual Casualty Company.

4. Since there is no reason to distinguish between the liability of Hong Kong and its driver

in this case, they will be collectively called "Hong Kong."

5. Occidental has abandoned its claim for equitable contribution.

arising out of accidents on public highways.

The parties agree that Section 1 of Part 1, the "Risks Insured" portion of the printed policy, is an "Introduction" which merely lists the *possible* coverages that *may* be afforded by Through Transport. The precise scope of risks that are insured is defined by Sections 2 through 6 of Part 1.[6] The "Certificate of Entry" is the writing by which Through Transport agrees to provide coverage to its insureds.[7] The named insureds are called "Members" in the policy.

The Certificate of Entry is comprised of a printed form followed by several typewritten pages. Blank spaces on the printed form have been filled with typewritten designations of the name of the insured, the policy number and the date. The typewritten page immediately behind the printed Certificate of Entry is headed, "CONDITIONS OF INSURANCE." The CONDITIONS page states:

> Services in respect of which the Member is insured in accordance with the Rules, Part I, Section 1 A 2:–
>
> (a) TRANSPORT OF CARGO, including the operation of containers, trailers and conveyances for the transport of cargo.

It therefore appears that the loss which occurred is one covered by the language of the insuring agreement. The exclusions from that insuring agreement must then be considered.

The parties agree that the Certificate of Entry incorporates the exclusions which are contained in the Rules and Bye-Laws.[8] Among those exclusions is Section 3 of Part 1 of the Rules, which excludes any liability arising from an insured's "ownership, possession, operation, maintenance, repair, driving or use by or on behalf of the Member of any road vehicle. . . ." Part 1, Section 3(C)(2).

■ Occidental contends that this "road vehicle" exclusion is ambiguous when read in the context of the "transport of cargo" insuring agreement. However, no ambiguity is created merely because an exclusion eliminates coverage from an insuring agreement. Policies are written in such a way as to first define the insuring agreements, and then to exclude from those agreements the specific risks which the insurer does not cover. *See, e.g., National Insurance Underwriters v. Carter,* 17 Cal.3d 380, 384, 131 Cal.Rptr. 42, 45, 551 P.2d 362, 365 (1976) (unambiguous exclusion bars coverage).

Occidental also argues that the "road vehicle" exclusion does not apply to the *combined* rig of tractor, trailer and container that was involved in this accident. It is therefore necessary to look at the policy's definitions. A "road vehicle" is defined as "any vehicle with integral means of mechanical or electrical propulsion used or intended to be used on public roads." The transport of cargo clause specifically extends coverage to "containers, trailers and conveyances," each of which is separately defined in the policy. Neither containers nor trailers alone are excluded

---

**6.** The policy language supports this reading. Part 1, Section 1(A)(1) provides "A member may be insured in respect of the services set out in 2 below *provided that* the Managers shall have agreed in writing the services in respect of which the Member is to be insured." Section 1(B)(1) of the same Part provides "The liabilities, loss and damage in respect of which a Member may be insured and the terms and *conditions applicable to such insurance are set out in Sections 2 to 6 of this Part.*"

**7.** The "Definitions" section of the policy explains that the "Certificate of Entry" is: "A document issued to the Member by the Managers evidencing the terms and conditions of his insurance, including any Endorsement thereto evidencing any change agreed in such terms and conditions."

**8.** The printed first page of the Certificate provides:

> The insurance provided by the Association is subject to the Bye-Laws and Rules of the Association and to the terms and conditions agreed in writing between the Member and the Managers. Paragraph 5 of the first typewritten page of the Certificate states:
>
> Liabilities, loss and damage in respect of which the Member is insured in accordance with and as more fully set out in the Rules, Part I, including, without prejudice to the generality of the foregoing, the exceptions and qualifications therein:—
>
> . . . .

by the language of the exclusion because they do not separately have integral means of propulsion. If the combined tractor-trailer-container unit is a "road vehicle," the exclusion would apply.

Through Transport takes the position that the combined rig is a road vehicle. Occidental reads the exclusion more narrowly: As only the tractor has integral means of propulsion, there is no coverage for the tractor; but the container is insured while being towed behind a tractor. The issue is therefore whether this exclusion either (1) excludes coverage for the entire rig, or (2) excludes only coverage for the tractor, and the container remains within the coverage.

The court believes that Through Transport's interpretation of the exclusion is correct. The relevant Through Transport policy concerns liability coverage, not first-person property coverage. A container is designed for use with a tractor and trailer. It is mobile on a highway only when mounted on a trailer and pulled by a tractor. If an exclusion of liability for operation on a highway is to make practical sense, the exclusion should include the entire rig. A highway liability exclusion on the container would accomplish little or nothing if only the tractor were excluded and the container being pulled remained covered. The court believes that the "road vehicle" definition and exclusion apply to liability from the use of the combined rig. *Accord, Transport Indemnity Co. v. Royal Insurance Co.*, 189 Cal.App.3d 250, 234 Cal.Rptr. 516 (1987).

■ In interpreting an insurance policy, a court may also look to evidence beyond the policy to determine the reasonable coverage expectations of the parties. *State Farm Mutual Automobile Insurance Co. v. Allstate Insurance Co.*, 9 Cal.App.3d 508, 517, 88 Cal.Rptr. 246, 250 (1970); *Herzog v. National American Insurance Co.*, 2 Cal.3d 192, 197–98, 84 Cal.Rptr. 705, 707, 465 P.2d 841, 843 (1970). In *Herzog* and in *State Farm*, the California Supreme Court

relied upon the fact that the insured had obtained separate motor vehicle insurance to support the conclusion that insurance on the insured's premises did not cover the insured's vehicles. *Herzog*, 2 Cal.3d at 197–99, 84 Cal.Rptr. 705, 465 P.2d 841; *State Farm*, 9 Cal.App.3d at 517, 88 Cal. Rptr. 246.

■ In this case, the meaning to be given the "road vehicle" exclusion is aided by the fact that Neptune made other arrangements to provide insurance for liability arising out of the use of its containers when on public highways. Under the lease agreement for the container, Hong Kong agreed to defend, indemnify and hold harmless Neptune for any liability arising out of Hong Kong's use of Neptune's container. The lease further required Hong Kong's insurer to furnish Neptune with a certificate evidencing the insurance required by the lease. Occidental, as Hong Kong's carrier, did issue such a certificate of insurance to Neptune. Under the undisputed evidence,[9] it appears that Neptune and Hong Kong did not reasonably expect that the Through Transport policy would provide liability coverage on the containers while being transported on public roads.

The court therefore concludes that the exclusion in Through Transport's policy applies, and that Hong Kong is not insured under the provisions of that policy.

### B. *The American Motorists Policy*

Uni-Flex, the owner and lessor of the trailer, was the named insured under a business auto policy issued by defendant American Motorists. Occidental contends that the American Motorists policy provides coverage to Hong Kong.

Hong Kong is covered under the insuring agreements of the American Motorists policy. That policy's language provides coverage for permissive users of Uni-Flex's au-

---

**9.** The parties do not suggest that reference to any other facts, either in these motions or at trial, would be material to interpreting the poli-

cy language. That is, there is no genuine issue of material fact necessary to the interpretation.

tos, and the term "autos" is defined to include trailers.[10]

■ American Motorists contends that coverage for Hong Kong is excluded by the policy's "contractual" exclusion.[11] That provision does exclude liability which the insured may have assumed by contract. But that is not the liability of the insured in this case. Rather, the liability of the insured was for the negligent condition or operation of the tractor.[12] The "contractual" exclusion simply does not apply to the liability here.

American Motorists therefore does provide *coverage to Hong Kong for the accident.*

### C. *The Lloyd's Policies*

■ Lloyd's underwriters issued two excess insurance policies to Uni-Flex:

(1) Certificate SX 1364 provides coverage of $75,000, which is excess to the coverage of $25,000 provided by the American Motorists policy. The certificate identifies "Flexi-Van Corporation and any subsidiary or affiliated partners, companies or corporations" as the only insureds. And there is no language in the policy providing coverage to permissive users of Uni-Flex's trailers. Even Occidental does not contend that Hong Kong has coverage under the language of the certificate.

(2) Certificate SXL 1108 provides another $250,000 of coverage, in excess of the $100,000 provided by the underlying Lloyd's and American Motorists policies. Certificate SXL 1108 expressly states that "this Policy shall follow the insuring agreements, conditions, and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this Policy." Thus, the scope of coverage provided by this second Lloyd's certificate applies only to the same risks insured by the first certificate. Since the first certificate does not extend coverage to Hong Kong, neither does the second.[13]

### IV.

### PERMISSIVE USER COVERAGE

■ Absent coverage for Hong Kong under the language of the Through Transport and Lloyd's policies,[14] Occidental contends that the California Insurance Code requires "permissive user" coverage to be extended to Hong Kong. The argument is that as a matter of public policy California law requires a motor vehicle policy to provide coverage to permissive users even though the language of the policy does not do so. The public policy is stated in Cal.Ins.Code § 11580.05, and the mandatory permissive user coverage is set out in Cal.Ins.Code § 11580.1(b).[15]

---

**10.** Section D of Part IV of the policy provides:
 D. WHO IS INSURED
  1. *You* are an *insured* for any covered *auto*.
  2. Anyone else is an *insured* while using with *your* permission a covered *auto you* own, hire or borrow.... (underlined portions are boldface in original)
  Under the definitions sections of the policy, an "auto" is defined as "a land motor vehicle, trailer or semitrailer designed for travel on public roads...."

**11.** American Motorists relies upon the following language:
 C. WE WILL NOT COVER EXCLUSIONS
 This insurance does not apply to:
 1. Liability assumed under any contract or agreement.
  . . . .

**12.** Uni-Flex and Neptune contracted that Neptune would hold Uni-Flex harmless for any liability arising out of the leased trailer. This language cannot be construed as a contractual *assumption* of liability by Uni-Flex.

**13.** Occidental argues that the language of Certificate SXL 1108 refers to the American Motorists policy and thus extends permissive user coverage to Hong Kong. As the language of the second Lloyd's certificate unambiguously refers to the *"immediately preceding* layer of coverage," that can only mean the first Lloyd's Certificate.

**14.** Occidental also argues that permissive user coverage must be read into the American Motorists policy. This court need not reach the question of whether California statutes require American Motorists to insure Hong Kong as the court has already determined that Hong Kong is entitled *to coverage by the terms of the policy* itself.

**15.** The statute's mandatory provisions include the following:
 (b) Every policy of automobile insurance to which subdivision (a) applies shall contain all of the following provisions:
  . . . .

However, under Section 11580.1,[16] the mandatory provision for permissive user coverage is only applicable to policies (1) which are automobile liability insurance policies; (2) which are issued or delivered in California; and (3) which cover motor vehicles. The court concludes that there is no genuine issue of material fact that neither the Through Transport policy nor the two Lloyd's policies were "issued or delivered" in California. The second requirement of Section 11580.1 is therefore not met, and that section does not mandate that those policies provide coverage for permissive users of the Flexi-Van trailer or the Neptune container.

The Through Transport policy was issued in Bermuda and delivered to Neptune in Singapore. The two Lloyd's policies were issued in South Carolina by the managing general agent for certain Lloyd's syndicates and were delivered to Flexi-Van in New Jersey. Through Transport and the Lloyd's underwriters have established those facts by uncontested declarations.

Occidental's relies on *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir.1986). In that case, a group of doctors set up a malpractice insurance fund for themselves in the Cayman Islands in order to avoid the California insurance regulations. The district court held that the delivery of a policy in the Cayman Islands to the attorney-in-fact for the doctors constituted issuance and delivery within the meaning of Section 11580.1. This application of the statute was not challenged on appeal, and the Ninth Circuit considered and upheld the constitutionality of exercising personal jurisdiction based solely on this contact with California. 784 F.2d at 1404–06. However, in the present case, neither the Through Transport nor the Lloyd's policies were issued by or delivered to an agent for a California resident. Neptune received the Through Transport policy in Singapore. Flexi-Van received the Lloyd's policies at its New Jersey office from the Lloyd's agent in South Carolina. Occidental has made no attempt to show that any party to these transactions was acting on behalf of a California principal, or that there was any deliberate attempt to avoid California insurance regulations.

Since the Through Transport and the two Lloyd's policies were neither issued nor delivered in California, the mandatory permissive user coverage of Section 11580.1 will not be read into those policies as a matter of California public policy.[17]

IT IS THEREFORE ORDERED that:

(1) Through Transport's motion for summary judgment is granted and Occidental's motion for summary judgment against Through Transport is denied.

(2) The motion of Lloyd's underwriters for summary judgment is granted and Occidental's motion for summary judgment against Lloyd's underwriters is denied.

## V.

## ALLOCATION OF LOSS

■ Having determined that the policies of Occidental and American Motorists provide coverage to Hong Kong for the accident, the loss must be allocated between

---

(4) Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his permission,....

**16.** Section 11580.1(a) of the Insurance Code provides in pertinent part:
No policy of *automobile liability insurance* described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance, or use of any *motor vehicle* shall be *issued or delivered in this state* on or after the effective date of this section unless it contains the provisions set forth in subdivision (b)
....
(emphasis supplied; see note 15, *supra,* for relevant portion of subdivision b.)

**17.** In light of this result, it is unnecessary for this court to consider whether the Through Transport and the Lloyd's policies were "automobile liability" policies, or whether the trailer and the container are covered "motor vehicles" as those terms are used in Section 11580.1(a).

these two insurers.[18] Such an allocation is generally resolved by examining the insuring agreements and the "other insurance" clauses of the policies. "It is the general rule that courts will give heed to 'primary' and 'excess' insurance provisions of insurance policies." *National American Insurance Co. v. Insurance Co. of North America,* 74 Cal.App.3d 565, 574, 140 Cal.Rptr. 828, 833 (1977); *accord, Mission Insurance Co. v. Hartford Insurance Co.,* 155 Cal.App.3d 1199, 1208, 202 Cal.Rptr. 635, 640 (1984). This rule is "particularly applicable" in cases such as the present one, where the dispute is between insurance companies. *Mission,* 155 Cal.App.3d at 1208, 202 Cal.Rptr. 635.

■ In this case, the Occidental policy is expressly described as primary while the American Motorists policy is identified as excess. Nonetheless, Occidental contends that the order of coverage should be determined by the scheme established by Section 11580.9(d) of the California Insurance Code.[19] The court is of the opinion that that section does not apply here. The facts contemplated in the section—that the two policies apply to the *same* motor vehicle— do not exist. The court will therefore allo-

cate the loss according to the language of the policies.

■ Under the language of the Occidental policy, its insurance is primary with respect to other insurance.[20] The American Motorists policy states that its coverage is excess when the trailer is connected to a tractor not owned by the named insured.[21] As the Flexi-Van trailer was connected to the Hong Kong tractor at the time of the accident, the insurance provided by the American Motorists policy is excess to Occidental's coverage.

Occidental concedes that American Motorists is only liable for $25,000 under the limitation of liability contained in the American Motorists policy.

Accordingly, American Motorists is required to contribute $25,000 toward the amount of settlement, in excess of Occidental's $250,000, unless it is established at trial that Occidental breached its duty of good faith.[22]

## VI.

### BAD FAITH DEFENSE

American Motorists contends that Occidental is not entitled to recover that contri-

---

**18.** It is arguable that because the combined limits of the two policies are less than the amount of the loss, it is not necessary to discuss allocations. However, because of American Motorists' defense discussed in Part VI below, the court believes this discussion is appropriate.

**19.** Section 11580.9(d) provides:

Except as provided in subdivisions (a), (b) and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.

**20.** Condition 6 on page 5 of the Occidental policy provides:

*Other Insurance:* The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the

amount of the company's liability under this policy shall not be reduced by the existence of such other insurance....(underlined portions are boldface in original)

**21.** Section B, "Other Insurance" of Part VI of the American Motorists policy states:

... while a covered *auto* which is a *trailer* is connected to another vehicle the liability coverage this policy provides for the *trailer:*
a. Is excess while connected to a motor vehicle *you* don't own.
b. Is primary while it is connected to a covered *auto you* own. (underlined portions are boldface in original)

**22.** The court is aware that the American Motorists policy is a "flow-through" policy with a liability limit of $25,000 and a deductible of $25,000. American Motorists may be entitled to recover $25,000 from its insured, Flexi-Van. The parties also indicate that Flexi-Van may be able to recover that $25,000 from Hong Kong under the "hold harmless" provision of the lease agreement between Flexi-Van and Neptune. As neither the validity nor the enforcement of that agreement is before this court, the court expresses no opinion on those contentions.

bution from it because Occidental paid the $750,000 settlement in order to avoid a bad faith claim by its insured. That is, that Occidental acted in bad faith by failing to settle the injury action within its policy limit when it had the opportunity to do so.

American Motorists' contention raises two considerations in the present motion. First, American Motorists asks this court to hold that Occidental cannot obtain summary judgment in its favor because a genuine issue of material fact exists as to whether Occidental acted in bad faith. Second, American Motorists asks this court to decide as a matter of law that Occidental acted in bad faith by refusing to accept Mansergh's settlement demand.

For the reasons stated below, the court concludes that a genuine issue of material fact exists regarding Occidental's alleged bad faith, and that it precludes summary judgment for either party on that issue.

### A. A Bad Faith Failure to Settle Would Preclude Contribution

■ Occidental does not dispute American Motorists' legal contention: an insurer who breaches the implied covenant of good faith and fair dealing by failing to settle a claim may not recover contribution for that portion of the loss that exceeded its policy limits. *Commercial Union Ins. Co. v. Ford Motor Co.*, 599 F.Supp. 1271, 1276 (N.D.Cal.1984).

Therefore, if Occidental acted in bad faith and paid the $750,000 settlement in order to avoid a bad faith suit, it is not be entitled to any contribution from American Motorists. On the other hand, if Occidental did not act in bad faith, it will be entitled to the contribution of $25,000 from American Motorists.

### B. A Question of Fact Exists Regarding Occidental's Alleged Bad Faith

■ American Motorists contends that the undisputed facts establish that Occidental breached its duty of good faith as a matter of law. "Liability is imposed not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within

the implied covenant of good faith and fair dealing." *Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 430, 58 Cal.Rptr. 13, 17, 426 P.2d 173, 177 (1967). Whether an insurer has breached its duty of good faith and fair dealing is ordinarily a triable issue of fact. *Gibbs v. State Farm Mutual Insurance Co.*, 544 F.2d 423, 427 (9th Cir. 1976); *Commercial Union*, 599 F.Supp. at 1274; *Northwestern Mutual Insurance Co. v. Farmers Insurance Group*, 76 Cal. App.3d 1031, 1053, 143 Cal.Rptr. 415, 428 (1978). As with other factual questions, however, a moving party may sometimes be able to establish by undisputed facts that the duty was breached as a matter of law. *Commercial Union*, 599 F.Supp. at 1275; *Continental Casualty Co. v. United States Fidelity & Guaranty Co.*, 516 F.Supp. 384, 390 (N.D.Cal.1981).

In *Commercial Union*, for example, defendant Ford showed that the insurer had failed to accept a settlement demand within its $500,000 policy limit, that the insurer knew the plaintiff was severely injured and that there was a risk that a jury verdict might exceed its policy limit, and that, in fact, the jury later returned a verdict of $3,250,000. 599 F.Supp. at 1274. Because the insurer presented no evidence to raise a triable issue of fact on the question of bad faith, the court found as a matter of law that the insurer had acted in bad faith. *Id.* at 1274–75; *see also, Continental Casualty Co.*, 516 F.Supp. at 390 (summary finding of bad faith where insurer refused to negotiate at all, preferring to go to trial although it knew liability was clear and recovery might exceed policy limits).

■ American Motorists argues that the facts of this case are analagous to *Commercial Union* and *Continental*. Occidental refused a settlement demand of $225,000, an amount $25,000 below its policy limit. Occidental conceded liability on the second day of trial, leaving the jury to determine only the issue of damages. Plaintiff Mansergh had suffered facial injuries, and the possibility of brain damages created the risk of a substantial recovery.

In response, Occidental maintains that its evaluation of the case and its refusal to

settle for $225,000 were reasonable. To support its position, Occidental relies on the evaluations of two state court settlement judges, both of whom valued the case at $100,000 or below. In light of these neutral and contemporaneous evaluations of Occidental's exposure, an issue of fact is raised as to whether Occidental breached its duty of good faith by failing to settle.

## VII.

## CONCLUSION

In summary, the court holds as follows:

1. Occidental provides primary coverage and is obligated to pay the full amount of its policy limit, $250,000.

2. American Motorists provides insurance for the loss in the amount of $25,000, which is excess to Occidental's coverage.

3. However, if Occidental breached its duty of good faith and fair dealing by failing to settle within its policy limits when it had the opportunity to do so, American Motorists will not be required to pay any portion of the loss. As a genuine issue of fact is raised on the issue of whether Occidental breached its duty of good faith, the cross-motions for summary judgment on that issue are denied.

4. Through Transport does not insure the loss under the terms of its policy, and California law does not require that the Through Transport policy provide coverage for the loss.

5. The Lloyd's underwriters do not insure the loss under the terms of their policies, nor are they required to provide coverage under California law.

6. A status conference will be held on May 8, 1987, at 11:00 a.m. to schedule dates and procedures for resolution of the bad faith issue.

IT IS SO ORDERED.[23]

23. The court acknowledges the assistance of Carl L. Blumenstein in the preparation of this

opinion.